(13 App. Div. 218.)

### ANDERSON v. NEW YORK & C. MAIL S. S. CO.

(Supreme Court, Appellate Division, First Department. January 22, 1897.)

**1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OPEN HATCHWAY.**

It was contributory negligence for a seaman to attempt to walk across a partially closed hatch, between decks, and midway between ports which he had been ordered to close, where he knew its location, and had, on a previous occasion, looked to see if it was covered, when closing the ports, and had, at the time when injured, walked across it in order to close one of the ports, and there was light enough from the other to see the condition of the hatch, and afterwards, in attempting to leave the deck at the point where he had descended, unnecessarily tried to again cross the hatch, and fell through the opening.

**2. EVIDENCE—PROOF OF CUSTOM—PERSONAL INJURY.**

In an action by a seaman against the owners of a vessel for injuries received by falling through a partially closed hatch after unloading cargo for the day, but before the final discharge of the cargo, evidence is admissible to show that it was customary for hatches to remain uncovered at night, while the vessel was discharging its cargo, where plaintiff had worked on the vessel eight months prior to his injury.

**3. MASTER AND SERVANT—FELLOW SERVANT—SEAMAN AND OFFICER.**

A seaman who was injured by falling through a partially opened hatch is the fellow servant of the officer of the vessel whose duty it was to see that the hatch was closed; hence the failure to perform the duty is negligence for which the owner of the ship is not liable. Per Barrett, J.

Appeal from trial term, New York county.

Action by Adolph Anderson against the New York & Cuba Mail Steamship Company for personal injuries. From a judgment entered on a verdict, and from an order denying a motion to set aside the verdict and for a new trial (39 N. Y. Supp. 425), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

L. C. Ledyard, for appellant.

Jacob Fromme, for respondent.

VAN BRUNT, P. J.   The appellant is a corporation organized under the laws of this state, and operating and conducting certain steamships employed in the business of carrying and conveying passengers and goods between, among other places, the port of New York and the port of Cienfuegos, Cuba.   One of the vessels employed by the company was a steamship called the Cienfuegos.   For a period of about 22 months prior to the happening of the accident which formed the subject of this action, the plaintiff had been employed as a seaman upon various steamers of the defendant, and for 8 months had been employed upon the vessel in question.   On the 17th of December, 1889, while the steamer Cienfuegos was lying in the port of Cienfuegos, the plaintiff was called upon, shortly after 5 o'clock in the afternoon, to assist the carpenter in closing certain ports of the vessel between decks, through which cargo had been discharged during the day.   The plaintiff was then upon the main deck.   He and the carpenter went down to the lower deck,

through the forward hatch, and then went aft. The plaintiff noticed a couple of boilers that lay upon the deck upon which he was to close the ports, forward of the hatch through which he fell. He walked alongside one of the boilers to the port on the port side of the vessel, and closed the same, and then went across the hatch in question, to the port on the starboard side, and closed it. Prior to the closing of the ports there was abundance of light between the decks, but, when the starboard port was closed, it was so dark that nothing could be seen. The plaintiff then started to go forward to reach the hatch down which he had descended, and, as he says, striving to avoid the boiler, he attempted to walk on the hatch in question, and, the same being partially uncovered, he fell through. It appeared from the evidence that the hatch was situated midway between the two ports which were closed, with a space on each side of about 12 feet between it and the sides of the vessel. It further appeared that the plaintiff was acquainted with the situation of the hatch, and that, upon a previous occasion when he went down to close the ports, he looked to see whether the hatch was closed, and found that it was; that upon the occasion in question there was sufficient light between decks, when the ports were open, for the plaintiff to see whether the hatch was entirely closed or not; and that he did actually walk over the covered part of the hatch in order to close the port on the starboard side of the vessel, after he had closed the port on the port side. There seems to have been no necessity whatever for the plaintiff to walk upon this blind hatch in going to the forward over-all hatch. He says that he was endeavoring to avoid the boiler which was lying against the starboard side of the vessel, but it appears that this boiler was lying forward of the blind hatch through which he fell, and that he was not compelled to walk upon the latter for the purpose of avoiding contact with the boiler. It is also clear that any observation exercised upon the part of the plaintiff while even the starboard port alone was open would have disclosed the condition of this hatch as to covering.

The defendants desired to show that it was customary, while vessels such as this were lying in port, and the discharge of their cargo was unfinished, to allow the blind hatches to be left uncovered at night. This evidence was objected to as incompetent. The objection was sustained, and the defendants excepted. This ruling seems to have been error. The defendants had a right to show what was the customary course of business upon this ship. The plaintiff had been engaged upon her for the past 8 months, and had made frequent voyages in her, and for 22 months had been engaged in ships on this line, some of which were similar to this vessel; and, upon the question of the use of due diligence, it seems to have been entirely competent to show that it was usual for hatches of this description to be left open at night while the discharge of cargo was unfinished. For if such was the practice, and such a condition of things might be anticipated, it certainly was the duty of the plaintiff, in going between decks in the neighborhood of this hatch, of the existence of which he was aware, to see for himself whether it

was open or closed. He testified that once before he had performed this duty, and found the hatch closed; but, on the occasion of the happening of the accident, it is not shown that he exercised any diligence in ascertaining whether the hatch, or any part of it, was open or not. It seems to be reasonably clear that the question as to whether he used due diligence or not depended upon the condition of things which he had a right to expect; and therefore, when the court excluded evidence as to what was the condition of things which the plaintiff might naturally expect to find between these decks, one of the elements by which his diligence might be tested was excluded from consideration.

. The judgment and order must be reversed, and a new trial ordered, with costs to appellant to abide event.

RUMSEY, WILLIAMS, and PATTERSON, JJ., concur.

BARRETT, J. I concur with the Presiding Justice that the plaintiff failed to make out his freedom from contributory negligence. On the contrary, his negligence was apparent. Nor was the defendant's negligence made out. Even if it had been, however, it was, within the rule laid down in Geoghegan v. Steamship Co., 146 N. Y. 369, 40 N. E. 507, the negligence of the plaintiff's fellow servant. It was there said:

"If the deceased came to his death by reason of the iron doors being left open on the night of the accident, then it was the negligence of a co-servant which led to the result. It was the duty of the master, or the mate, or some officer of the ship, to see that these gangway doors were properly closed and secured at night. The failure to perform this duty is negligence for which the owner of the ship is not liable. Benson v. Goodwin, 147 Mass. 238, 17 N. E. 517; Rogers v. Manufacturing Co., 144 Mass. 198, 11 N. E. 77; The City of Alexandria, 17 Fed. 390."

This doctrine, it seems to me, is conclusive upon the question of the defendant's liability. I prefer to rest my concurrence upon these grounds, without passing definitely upon the admissibility of the general custom upon such vessels as that of the defendant's. A general custom to act negligently would certainly not avail; and it is hard to say when a failure to do something which, but for the custom, would be negligent, is relieved of that attribute. It may be, however, that the rule of action upon this particular ship was admissible, in view of the plaintiff's position. He had been employed thereon for some eight months, and must have known the usage with regard to leaving the hatch open overnight while cargo was being discharged during the day. The case was tried and submitted to the jury upon the theory that the plaintiff had a right to assume that the hatch was closed. He could hardly have assumed this if the practice was the reverse, and if his knowledge of the practice was fairly inferable from his long and steady employment upon the ship. So far I am inclined to agree with the views of the Presiding Justice upon this subject. Beyond that, I prefer to reserve my judgment.