### DROGE v. JOHN N. ROBINS CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT—EMPLOYER'S LIABILITY ACT—
   NEGLIGENCE OF SUPERINTENDENT.

   To hold an employer liable under Employer's Liability Act, Laws 1902, p. 1748, c. 600, making an employer liable for injuries caused by the negligence of a co-employé intrusted with superintendence, it must be shown, not only that the negligence was of one exercising superintendence, but that he was engaged in an act of superintendence at the time.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 371–373.]

2. SAME—UNSAFE PLACE TO WORK.

   A master who sends a servant to work aboard a ship in charge of its officers and crew does not give the servant an unsafe place in which to work, within Employer's Liability Act, Laws 1902, p. 1748, c. 600, making an employer liable for injuries to an employé caused by any defect in the condition of the ways, works, or machinery connected with the business of the employer, where there is no reason to suppose that it contains any defects which are not open and obvious, and which are not common to ships of similar character.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 200.]

3. SAME—NEGLIGENCE OF SUPERINTENDENT.

   In an action for injuries to an employé on a ship stepping into an open hatchway, evidence *held* to show that the injuries were not proximately caused by negligence of an employé intrusted with superintendence while engaged in superintendence, essential to a recovery under Employer's Liability Act, Laws 1902, p. 1748, c. 600, making an employer liable for injuries to employés caused by such negligence.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 978, 979.]

4. SAME—SUPERINTENDENT—WHO IS.

   An employé of the owners of a vessel engaged in superintending repair work thereon is not the superintendent of an employer supplying employés to do the work, within Employer's Liability Act, Laws 1902. p. 1748. c. 600, making an employer liable for injuries to employés caused by the negligence of "any person in the service of the employer" intrusted with and exercising superintendence.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 371–373.]

Appeal from Trial Term.

Action by Louis Droge against the John N. Robins Company. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

L. Sidney Carrere, for appellant.

Frederick S. Lyke, for respondent.

WOODWARD, J. The defendant is engaged in the business of making general ship repairs, and has its plant at what is known as the "Boston Dry Dock." In the month of January, 1905, the defendant had in its employ Louis Droge, the plaintiff, William White, and John Kelly, as machinist's helpers. The steamship Finance had suffered damages from a fire on board. She was owned by the Panama Railroad Company, and had been moored alongside of the defendant's wharf, where she had for some time been undergoing repairs. The defendant had been engaged in doing the engine work in such repairs, while other independent contractors were engaged in other work; and all of the time that the steamship remained at this dock she was in charge of the officers and crew of the ship. The defendant had practically completed its work on the engines on the 1st of January, 1905, and on the 5th day of that month the Panama Railroad Company made a request in writing of the defendant that it should supply three men to work under the direction of its chief engineer. This work was no part of the work for which the defendant was under contract. It was work which the Panama Railroad Company desired to have done to fit the ship for navigation, and it was work which was to be done under the direction of its own chief engineer. Droge, White, and Kelly were directed by one Simms, a foreman of the defendant, to report on board the steamship, and to do whatever they were directed to do by the chief engineer. The plaintiff had had 25 years' experience in similar lines of work. For two years he had been a machinist's helper, doing all kinds of work in and about steamships. The plaintiff, with the other two men, worked under the directions of the chief engineer or his assistant for several weeks, and up to the day of the accident here complained of, on the 31st day of January, 1905. At that time one Garrett was the assistant engineer, and was engaged in directing the work of the plaintiff and his fellow laborers. Garrett, White, and Kelly arrived at the ship a little earlier than the plaintiff, and the two latter were told to get lamps in the engine room, where there was a supply of five or six lamps, and to go with Garrett to the orlop deck for the purpose of thawing out some water pipes leading from the water tank. The orlop deck is the one nearest the water line, and Garrett, White, and Kelly, in reaching the place, were obliged to pass down through a hatchway by means of a perpendicular ladder, which landed them on the orlop deck. Arriving upon this deck, there were no covers on the hatch at the foot of the ladders; the hatchways being around on the back side of the ladders as they came down. It was dark on the orlop deck, but the lights carried by Garrett and White were sufficient to show them that the hatchway was open. The plaintiff, on arriving at the ship, went to the engine room to change his clothes, and while there met Kelly, of whom he inquired where the men were at work, and was told: "Down in the hold. Come ahead down." Plaintiff followed Kelly down the ladder to the orlop deck, and went

over to where White, Kelly, and the engineer were working. Some one, it does not appear who, said, "Get some more lamps," and the plaintiff responded that he would get them, and, while attempting to reach the ladder down which he had just passed, he stepped into the open hatchway, receiving the injuries for which he has been awarded a verdict in this action.

The negligence relied upon, if there was negligence of an actionable character, is concededly that of Garrett, the assistant engineer of the steamship, in the employ of the Panama Railroad Company, and the defendant's liability is based upon the proposition that Garrett was its superintendent under the provisions of the employer's liability act (Laws 1902, p. 1748, c. 600). It is important at the outset to get an idea of just what constituted the proximate cause of the accident; for, whatever of uncertainty originally surrounding the question of the scope of the employer's liability act, it is now established that, in order to hold the employer liable, it must be shown, not only that the negligence was that of one exercising superintendence, but that he was engaged in an act of superintendence at the time. Lowrey v. Huntington Light & Power Co., 121 App. Div. 245, 105 N. Y. Supp. 852; Guilmartin v. Solvay Process Co., 189 N. Y. 490, 494, 82 N. E. 725. There is no suggestion that there was any "defect in the condition of the ways, works, or machinery connected with or used in the business, of the employer," as enumerated in section 1 of chapter 600 of the Laws of 1902, and it cannot be said that the master has given the servant an unsafe place in which to work when he has sent him aboard a ship in which none of the ways, works, or machinery are in a defective condition, and where the same is in charge of the officers and crew of such ship, and there is no reason to suppose that it contains any defects which are not open and obvious, and which are not common to ships of the character of the one in question. The proximate cause of the accident was undoubtedly the fact that this hatchway was open on the orlop deck, and the so-called negligence of the defendant, through its alleged superintendent, Garrett, must be based upon the fact that Garrett, who had preceded the plaintiff, knew that the hatchway was open, and did not close the same or give warning that it was open. It should be remembered that the ship was in the control of the officers of the Panama Railroad Company, or the officers of the ship. So far as the evidence goes, the hatchway may have been open for the purpose of enabling the other contractors to do their work, or it may have been open for the purpose of storing cargo or coal or supplies in the hold of the vessel. Certainly the evidence does not show that Garrett had any control over the hatchway, or that it was customary or proper, under ordinary circumstances, to have a hatchway on a lower deck of a vessel of this character closed. This was not the case of a passenger falling through an opening in an upper deck, it was of a man of large experience working in and around steamboats, engaged in making repairs, knowing that others were at work upon the boat, knowing that it was dark, and that there were hatchways which were liable to be open, and, if there was any negligence on the part of Garrett, it was that he, knowing of this opening, did not warn the plaintiff, or close the hatchway. But Garrett had been there but a few

minutes. The work to be done was not apparently of a long duration. He had seen the hatchway with the aid of his light and that carried by White, and there is nothing to show that in calling for more lights he addressed himself to the plaintiff, or that he knew that the plaintiff was without a light, or that he had not seen the hatchway in coming down. Indeed, it may be questioned whether Garrett knew that the plaintiff was there at all, and as to the other two, who had seen the open hatchway and knew that it was not closed, he owed no duty so far as we are able to discover. Clearly it was not the duty of the master, after furnishing a reasonably safe place in which to perform his services, to precede the plaintiff down every ladder, and upon every dark deck, and to see that there were no open hatchways. Hatchways are necessary to the usefulness of ships. They are, of necessity, open at times, and there is no evidence in this case to show that this hatchway was not necessarily open, or that Garrett had any authority to close it, or to order it closed. The fact that the deck was dark was as obvious to the plaintiff as to any one. He was going for more light when he met with the accident; and it is not disputed that there were plenty of lamps in the engine room for the purpose, and, if Garrett was the defendant's superintendent, then it may be fairly said that the master, in having these lamps available, had discharged its duty in this respect, for Garrett had concededly directed the men to take the lamps in the engine room for the purpose of performing this work. McConnell v. Morse I. W. & D. D. Co., 187 N. Y. 341, 346, 80 N. E. 190, 10 L. R. A. (N. S.) 419. How can it be said, therefore, that Garrett, assuming him to have been the superintendent of the defendant, was guilty of any neglect in superintendence? He certainly was not the superintendent of the ship as the place for the plaintiff to work. He was, at most, in charge of these three men, directing them as to the work to be done, and, as the defendant had not delegated to him any superintendence of the ship as a whole, how can it be said that he was negligent in any matter of superintendence in failing to close down a hatchway some 14 feet from the point where an incidental job of thawing out a water pipe was under way? Obviously no such duty was imposed upon the master, and the master had not volunteered to furnish a superintendent for any such purpose, and under the facts of this case there would be no liability on the part of the master, even though Garrett was its superintendent.

But Garrett was not the defendant's superintendent within the meaning of the employer's liability act. He was not in the employ of the defendant; was in no wise subject to the control of the defendant, and legislation has not yet reached the point of imputing negligence where there is not, at least, some measure of control on the part of the one who is to be held liable. The language of the statute, when read in connection with the purposes of the act, is not capable of such a construction as the plaintiff seeks to place upon it. The provision is:

"Where, after this act takes effect, personal injury is caused to an employé who is himself in the exercise of due care and diligence at the time: * * * (2) By reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence whose sole or principal duty is that of superintendence, or in the absence of such superintendent,

of any person acting as superintendent with the authority or consent of such employer [shall be given the additional right of action]."

The effort to make this provision reach out and embrace Garrett, the employé of the Panama Railroad Company, in charge of certain repairs being made by the latter company in its own behalf with workmen furnished by the defendant, as the superintendent of the defendant, shows to what an extent enthusiasm in behalf of an unfortunate client may carry counsel and even the court. The primary liability of the employer for the negligence of a superintendent is limited to "any person in the service of the employer," and no fair construction of the statute· could be made to cover any other case than that of a person in the service of the defendant. If the defendant had been doing the work under its contract, and the work had been such as to require the services of a superintendent in the sense in which that word is used in the statute, and it had permitted Garrett to come in and act as such superintendent, and the accident had been caused by his negligence in respect to a matter of superintendence, it may be that the court would be justified in holding that he was in the service of the defendant, even though he received his pay from the Panama Railroad Company, but no such state of facts exists here. Garrett was not in any possible sense in the service of the defendant. He was in the service of the owners of the ship. He was in charge of work in behalf of his own employer, and the plaintiff, while in the general employ of the defendant, was at that time in the special employ of the owners of the ship. Under such circumstances, there was certainly no liability on the part of the defendant to the plaintiff in this action, and the judgment should not be permitted to stand.

The judgment and order appealed from should be reversed, with costs.

Judgment and order reversed and new trial granted; costs to abide the event. All concur.