### WILLIAMS v. TRECARTIN et al.

(Supreme Court, Appellate Division, Second Department. March 26, 1915.)

1. MASTER AND SERVANT ⬅➡121—INJURIES TO EMPLOYÉ OF STEVEDORE—LIABILITY.

    Stevedores have no general duty to guard, light, or give warnings as to underdeck hatchways where their men are not working, and especially on decks where no cargo operations are going on.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. ⬅➡121.]

2. SHIPPING ⬅➡84—INJURIES TO EMPLOYÉ OF STEVEDORE—LIABILITY.

    Shipowners have no general duty to guard, light, or give warnings as to underdeck hatchways where their men are not working, unless the opening is so near the work or path of an employé's duty as to call for special precautions.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. ⬅➡84.]

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. MASTER AND SERVANT ⬚234—INJURY TO EMPLOYÉ OF STEVEDORE—CONTRIBUTORY NEGLIGENCE.**

Where plaintiff longshoreman, employed by a stevedore to break cargo, while walking along the deck below where he had been working to get a drink of water, fell down an open hatchway, his employer was not liable on account of the plaintiff's contributory negligence; he, having been employed for some years as longshoreman, being chargeable with notice that hatchways in underdecks are generally left open while the ship is in port, and the darkness of the lower deck being obvious to him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 648–686, 706–709; Dec. Dig. ⬚234.]

Appeal from Trial Term, Kings County.

Action by Lewis Williams against James W. Trecartin and Solon E. Turner. Judgment for plaintiff, and defendant Turner appeals. Reversed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

James J. Mahoney, of New York City (F. Wright Moxley, of New York City, on the brief), for appellant.

William Adams Robinson, of Brooklyn, for respondent.

PER CURIAM. Plaintiff has a judgment for personal injuries against defendant Turner, who was a member of a stevedoring firm which had contracted to discharge cargo from the steamship Massachusetts at the foot of Fortieth street, Brooklyn. As one of the longshoremen in defendant's employ, plaintiff had been working on the dock up to 6 p. m., when he was ordered on board the ship to drive the winch at hatch No. 4. At this time three hatches (Nos. 1, 2, and 4) were working, with separate gangs at each hatch. These hatches were estimated to measure about 12x15 feet in size, and were about 12 feet apart. Cargo from hatch No. 4 was coming up from the lower between-deck; that is, the second deck beneath the top or weather deck. No work went on from hatch 3, which was closed over on the top deck and half closed in the upper between-deck, in which it is questioned if any cargo was carried. In this deck the after section of hatch 3 had the covers on, leaving the fore section (about 6 feet fore and aft) open and uncovered. The coamings of these 'tween-deck hatches were only about 3 inches high. In each hatchway, No. 4 and No. 2, where the work was going on, a cluster of electric lights was hung about a foot and a half beneath the top deck. The testimony was that they were poor, sometimes went out, and, being to light the hatchways where the drafts went up, were turned inward toward the hatch openings, and away from hatch No. 3.

Between 9 and 10 p. m. plaintiff left his work at the winch at No. 4 hatch, as he states, to get a drink. It seems that the men took water from the dock, and often had a pail down in the hatchways where the harder work went on. Plaintiff started to go for water down in hatch No. 2. He, of course, could walk along the top deck forward to hatch No. 2, and go down by that hatch ladder. He testified that there were different objects on the top deck that might impede him;

also that the top deck was not well lighted. So he went down the ladder at hatch No. 4 into this upper between-deck, and, walking forward, reached hatch 3, stepped on it, and walked on, and right into the opening at the fore section, falling down into the ship's hold. There was no testimony that any drinking water was then down in hatchway No. 2, that defendants had exercised any control over hatch No. 3, or had any reason to suppose that plaintiff's duties would take him about this hatchway in the night.

[1, 2] Stevedores have no general duty to guard, light, or give warnings as to underdeck hatchways, where their men are not working, especially in decks where no cargo operations are going on. Indeed, the shipowner himself is not under such a duty, unless the opening is so near the work, or the path of an employé's duty, as to call for special precautions. Andersen v. New York & Cuba M. S. Co., 13 App. Div. 218, 43 N. Y. Supp. 213. In like manner, a trapdoor in a building, when left open, is no breach of duty towards an employé, who, knowing where it was, also knew that it was likely to be opened. Young v. Miller, 167 Mass. 224, 45 N. E. 628. A contracting stevedore, like these defendants, has no control of the parts of the ship in which his work does not lie.

[3] Plaintiff had worked several years as longshoreman. During 1906 he had been employed by the Ward Line, and since that for different contracting stevedores. He was therefore chargeable with notice that the hatchways in the underdecks are generally left open while the ship is in port. Andersen v. New York & Cuba M. S. Co., supra. See The Saratoga (D. C.) 87 Fed. 349, and cases cited. The darkness in this between-deck was obvious to the plaintiff from the fact that the ship's lights there were each directed into the hatchway being worked. No breach of duty by the defendants appears (Droge v. Robins Co., 123 App. Div. 537, 108 N. Y. Supp. 457), and, on the facts now shown, plaintiff was himself negligent.

Hence the judgment should be reversed on the law and on the facts, and a new trial granted; costs to abide the event.