## SMITH v. UNITED STATES et al.

(District Court, S. D. New York. July 18, 1924.)

1. **Shipping ☞85—Member of crew may not recover against stevedores for failure to provide safe place to work when loading.**

Law requiring that one shall be provided with a safe place to work applies only where relation of master and servant exists, precluding recovery by member of crew against stevedores for injuries received when loading cargo.

2. **Shipping ☞84(3¼)—Open hatchways on vessel loading or discharging cargo are one of risks incidental to work in which crew are engaged.**

Open hatchways on a vessel which is loading or discharging cargo are a necessity much of the time, and one of the risks incidental to work in which crew are engaged, and which each one of them must himself avoid.

3. **Shipping ☞84(4)—Negligence of crew removing hatchway cover, through which third officer fell, precluded recovery from owner or ship.**

Where cover of hatchway through which member of crew fell had been removed by ship's crew, any negligence was on part of fellow members of crew, precluding recovery from owner or ship for injuries received thereby.

In Admiralty. Suit by Raymond O. Smith against the United States and others. Decree in accordance with opinion.

Affirmed 18 F. (2d) 111.

Austin & Abruzzo, of Brooklyn, N. Y. (Ralph Stout, of New York City, of counsel), for libelant.

William Hayward, U. S. Atty., of New York City (Nathan A. Smyth and J. Ralph Hilton, both of New York City, of counsel), for respondents United States, United States Shipping Board Emergency Fleet Corporation, and Export S. S. Corporation.

GODDARD, District Judge. This is a suit to recover $50,000 damages for injuries sustained by the libelant, who fell through No. 2 'tween-deck hatch on the steamship Dochet on August 29, 1921, at about 2 p. m., while she was being loaded with a cargo of flour at the Kent Street dock in Brooklyn, New York.

The libelant seeks to recover on the theory that he was not provided with a reasonably safe place wherein to perform his work and the failure of respondents to provide a sufficient light. Shortly before the accident, the libelant, who then was and had been third officer on the Dochet for some three or four months and was familiar with the ship, was acting as a checker of cargo in 'tween-deck hatch No. 3. The loading of the ship was in charge of Brady & Gioe, Inc., stevedores. The 'tween-deck No. 2 hatch cover was off, and the main deck hatch was on. At 1 o'clock that day he was sent by the captain to check cargo in 'tween-deck hatch No. 3. He had not checked any cargo that morning, but was working around the deck of the ship. In going to the No. 3 hatch, he went down a stairway aft of this hatchway through a manhole. At about 2:35 p. m., it became necessary for him to talk to the foreman of the stevedoring concern, and he sent word for him to come to the hatch; when the foreman came to the hatch, because of the noise, he could not hear the foreman, and the foreman indicated that the libelant should come on deck; the libelant then looked and saw that the ladder that he came down on was piled with cargo and he was not able to use it. He was up on top of some of the bags of flour, and jumped down on the floor of the 'tween-deck, intending to go forward to a ladder near hatch No. 2; he took a step as he reached the floor of the 'tween-deck, and testified that, because of the darkness, he hesitated for a moment to get accustomed to the darkness, and then took a second step, and fell down the steps of hatch No. 2, the cover of which was off.

The libelant further testified that at the end of the previous working day he had seen the hatch covers of hatch No. 2 'tween-deck and main deck were put on; that, the last he saw of the 'tween-deck hatch, the cover was on. He testified further that he never went over hatch covers, whether they were open or closed, and at the particular moment he thought they were closed, and further he thought he was on the side of the hatch cover opening.

Larson, a seaman on the Dochet, called as a witness by the libelant, testified that the ship's crew took off all the hatch covers at 7

o'clock in the morning, so that the stevedores could go to work; that the stevedores put on No. 2 'tween-deck hatch at about 12 o'clock, because of threatening weather and having finished their work. Libelant testified that he saw nothing of this.

[1] The rule of law which requires that one shall be provided with a safe place to work, and which libelant relies upon, applies only where the relation of master and servant exists; therefore, as that relationship did not exist between the libelant and the respondent Brady & Gioe, Inc., the libel must be dismissed as to it, and the question which remains to be disposed of is whether the libelant, a member of a crew, can recover from the other respondents. There was no proof that the hatch or its covers were defective, and presumably they were not.

[2] Movable lighting fixtures were provided by the ship owners, but they were not being used at hatch No. 2 at the time, for no work was going on at this hatch, and apparently the crew felt that there was no need for them, and from the record it does not appear that it was customary to have lights between-decks, except when working the hatches. The fact that it is a well-known custom that the third officer has charge of the forward part of the ship, where the accident occurred, should not be overlooked. Open hatchways on a vessel, which is loading or discharging cargo, are a necessity much of the time, and no one realizes or should realize more than the members of the crew that it is a danger which must exist, and one of the risks incidental to the work in which they are engaged, and which each of them must himself avoid.

In the case of Williams v. Treeartin, 166 App. Div. 745, 747, 152 N. Y. S. 340, 342, the court stated:

"Plaintiff had worked several years as longshoreman. During 1906 he had been employed by the Ward Line, and since that for different contracting stevedores. He was therefore chargeable with notice that the hatchways in the under decks are generally left open while the ship is in port. Anderson v. New York & Cuba M. S. Co., 13 App. Div. 218, 43 N. Y. S. 213; see the Saratoga (D. C.) 87 F. 349, and cases cited. The darkness in this between-deck was obvious to the plaintiff, from the fact that the ship's lights there were each directed into the hatchway being worked. No breach of duty by the defendants appears (Droge v. Robins Co., 123 App. Div. 537, 108 N. Y. S. 457), and, on the facts now shown, plaintiff was himself negligent."

The Nikolai II (D. C.) 102 F. 174, 175:

"When libelant descended the ladder, if it was as dark below as he represents it to have been—so dark that he could not see at the foot of the ladder, what the passway was, and in what direction to go; so dark that he 'could not see where to walk'—it seems to me that ordinary prudence and precaution required him to return up the ladder for a light, or to endeavor to get one, or while on the ladder to have called to his companion, Jordan, for a light. * * *"

[3] The testimony shows that the cover of the hatchway through which the libelant fell had been removed by the ship's crew; therefore, if there was any negligence, it was on the part of the fellow members of the crew, and the libelant cannot recover from the owner or ship for this.

In The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760, Mr. Justice Brown stated:

"We think the law may be considered as settled upon the following propositions: * * *

"(3) That all members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"(4) That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

See City of Alexandria (D. C.) 17 F. 390.

However much the court may sympathize with the unfortunate accident which the libelant met with, it follows that the libel against the respondent Brady & Gioe, Inc., should be dismissed, and that the libelant can recover no indemnity from the remaining respondents, but is entitled to maintenance and cure.

The usual decree may be entered in accordance with the foregoing.