MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V. DELIA BARNES.

**Contributory Negligence—Railroad Employe.**

B., one of the painting gang of a railroad locomotive department, was familiar with the premises where a vat of boiling lye was kept. The lid of the vat was down as B. passed across it, going after a bucket of water, but had been raised by the man in charge when B. returned, and he stepped into it. Steam escaped from the vat both when the lid was down and when it was open, and B. knew that the lid was liable to be raised at any time. Held, that his failure to notice that the vat was open was contributory negligence, precluding a recovery for the injury so received.

Appeal from the District Court of Grayson. Tried before Hon. Richard Morgan.

*T. S. Miller* and *Smith & Beaty,* for appellant.—1. Appellant had the right to select the instrumentalities and conduct its business in its own way, and, unless there was a failure on its part to exercise ordinary care for the safety of its employes, it is not liable to them if they are injured. 1 Labatt Mast. and Serv., secs. 34, 39; Kraeft v. Meyer, 92 Wis., 252; Fisk v. Railway, 158 Mass., 238; Bonnett v. Railway, 86 Texas, 72.

2. The court erred in refusing to grant defendant's motion for a

new trial on the ground that the verdict is not supported by the evidence in this: The evidence shows that the deceased knew the location, construction, contents, surroundings and manner of using the vat into which he fell at the time he fell, and assumed the risk of the same, if the same was dangerous. Railway v. Thompson, 33 S. W. Rep., 718; Railway v. Scott, 62 S. W. Rep., 1077; Railway v. Lempe, 59 Texas, 19; Oil Company v. Shaw, 65 S. W. Rep., 693; Railway v. Walker, 76 S. W. Rep., 228; Quill v. Railway, 57 S. W. Rep., 948.

3. When the undisputed evidence shows knowledge on the part of the servant of the danger that causes his injury, prima facie, he is, as a matter of law, held to assume the risk of same, and the burden rests on him to show facts that will relieve him from the consequences. Railway v. Royall, 43 S. W. Rep., 816; Railway v. Sheider, 88 Texas, 163; Railway v. De Ollos, 76 S. W. Rep., 224.

*Wolfe, Hare & Maxey,* for appellee.—On the point that it was necessary for the deceased to have had a knowledge of the habits of leaving the tank open: Missouri, K. & T. Ry. Co. of Texas v. Mayfield, 68 S. W. Rep., 817; Texas & Pac. Ry. Co. v. Johnson, 89 Texas, 519; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 351; Bennett v. Railway Co., 89 Texas, 72; Texas & N. O. Ry. Co. v. Bingle, 91 Texas, 287; St. Louis S. W. Ry. Co. v. Kelton, 66 S. W. Rep., 887.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by John Barnes against the appellant to recover damages for personal injuries received by him while in the employ of appellant at Denison, as a member of the paint department. John Barnes having died during the pendency of the suit, on May 14, 1904, Delia Barnes, his wife, made herself a party plaintiff, and prosecuted the suit for herself and the children of John Barnes. A trial resulted in a judgment in favor of Delia Barnes for $3,500, and that the children take nothing, from which judgment defendant appealed.

*Conclusions of fact.*—John Barnes was a member of the painting gang of the locomotive department of appellant at Denison. J. H. Roher was his foreman. The railroad, near which the new paint shop in which Barnes worked is located, runs nearly southeast and northwest. The new paint shop is north of the track. The oil room is south of the railroad and a little west of south from the new paint shop. The blacksmith shop is south of the iron room. There is a door in the oil room on the east side near the southeast corner; there is a door in the north side of the old paint shop near the northeast corner, one in the south side near the center, and one in the west end. The door to the iron room was in the east end. The oil, varnishes and waste were kept in the oil room, and other supplies were kept in the storeroom, which was near the roundhouse. The iron room is south of the new paint shop and also south of the railroad. Between the iron room and the railroad is a vat built in the ground. It is about eight feet long, and three or four feet wide, and three feet deep, in which lye is prepared for putting in pumps, brake cylinders and other machinery, to clean them. The vat has two doors about four feet long and three or four feet wide, which open upwards

like the lid of a trunk. A car standing on the track would be about two and a half feet from the edge of the vat.

There was a faucet for furnishing water on the north side of the vat. There was also a faucet with a steam hose attached for heating water. The faucets were constructed to prepare the lye for the vat, but it had been the custom of the painters, whenever they wanted warm water, to draw water from the water faucet and then turn the steam hose into the bucket and heat it. This had been the custom so long that the company knew, or should have known, of it. It was necessary for the painters to have warm water to wash off the old paint from the engine tanks. The painters had no business with the vat, but when they went to the oil room for stock, or to the vat to get water, if there was a car on the track, it was their custom to walk over a corner of the vat. The oil men, in carrying oil for the engines, also usually walked over the corner of the vat if there was a car on the track.

For a more particular description of the surroundings of the vat reference is here made to the following diagram:

On the 11th of March, 1903, John Barnes, a painter, started from the new paint shop with a bucket to go to the vat to get some warm water. There was a box-car standing on the track just north of the vat. When he reached the vat he asked Tudor, who was working at the vat, if there was any water in the vat, and was told there was none. Tudor belonged to the cleaning department. Barnes then said that he would go to the blacksmith shop and get water, and turned and started in the direction of the blacksmith shop. The water had been cut off the pipe at the vat

the night before to keep it from freezing, and had not been turned on when Barnes came to the vat for water. In such case it was customary to go to the blacksmith shop for water and return to the vat to warm it. The water was warmed by turning the steam hose in the bucket of cold water. Just prior to Barnes' return to the vat Tudor opened the east door to take out a pump. He went to the west end of the vat, leaving the door open, and stooped down with his back to the vat to get a wire to pull the pump out. While so doing he heard some one halloa, and turned and saw a man in the vat. He ran to him and saw it was Barnes, and pulled him out. It was about nine o'clock in the morning and the weather was cool. Barnes died, as a result of falling in the vat, on March 24, 1903. When the lid of the vat was raised the steam would boil up out of the vat so that one approaching the vat could not see whether the doors were open or closed. There is evidence that when the doors are closed the steam will boil up around the doors, but not to so great an extent as when they are opened.

## OPINION.

Whether or not the act of Tudor, in raising the east lid or door of the vat, and leaving it open, while he went to the west end thereof to get a wire to pull out a pump, knowing that Barnes would likely return to the vat to warm his bucket of water, was such actionable negligence as made the appellant liable, it is unnecessary to decide. It is not denied that Barnes was familiar with the location of the vat, its contents, surroundings and manner of its use. The court so told the jury in the charge, and that he assumed the risks incident to these matters, with which he was familiar. Barnes must have known that the doors of the vat were required to be opened at times to take out or put articles in the vat for cleaning. He knew that the vat was being used, for he had conversed with Tudor, who was working there, only a short time before. He had been working on the premises ever since the vat had been there, which was at least six years. He knew that the vat was for the preparation and boiling of lye to clean machinery. He knew that the boiling lye in cold weather gave off steam in such volume that when the doors of the vat were open it concealed the top of the vat from view. The first notice that Tudor had that any one had fallen in the vat was when he heard Barnes' halloa. If Barnes, when he returned from the blacksmith shop with the water, could have seen the vat was open and thoughtlessly walked into it, or if the same was so clouded by steam that he could not see it and walked into it without knowing whether the vat was closed or open, in either event we are of the opinion he was guilty of such contributory negligence as precluded a recovery by plaintiff. (Bonnet v. Railway, 89 Texas, 72; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 159; Shipply v. Leather Co., 83 N. W. Rep., 234, 124 Mich., 553; Browne v. Seigel, 60 N. E. Rep., 815, 191 Ill., 226.)

The appellant requested the court to instruct a verdict for it. Under the case as made this charge should have been given. The cause having been fully developed, the judgment is reversed and here rendered for appellant.

*Reversed and rendered.*