JAMES GAVIN, ADMINISTRATOR, ETC., OF JOHN GAVIN, DECEASED, RESPONDENT, v. THOMAS O'CONNOR, AP-PELLANT.

Submitted July 9, 1923—Decided November 19, 1923.

1. The liability of the owner or occupier of premises who expressly or impliedly invites others to enter thereon is only co-extensive with his invitation; his duty of care is limited by that, and when the limits of the invitation are exceeded such duty ceases except as to abstaining from acts willfully injurious.
2. Plaintiff's intestate, a young boy, was killed by the fall of a clothes pole in the backyard of a two-family house on the first floor of which he lived. The pole was not in use at the time, and the only assignable cause of its fall was the strain put on one of the clothes lines by a boy hanging thereon trying to make his knees touch the ground. *Held*, that a nonsuit was rightly directed.

On appeal from the Supreme Court, which reversed a nonsuit in the Circuit Court.

For the appellant, *Eugene T. Sharkey*.

For the respondent, *Alfred Brenner*.

The opinion of the court was delivered by

PARKER, J.  Plaintiff's intestate, a boy between seven and eight years old, was fatally injured in the backyard attached to a two-family house belonging to the defendant, by the fall of a clothes pole erected and maintained by defendant to sup-

port clothes lines extended from the house. Plaintiff and his family were tenants of the ground floor, and the intestate was his son, who, with several other boys, was playing in the backyard at the time. There was evidence to indicate that the pole was decayed near the ground and had been patched by nailing a wooden cleat to it, but it had stood up until that time under the strain of such washed clothes as were hung on the lines, and this was the sole purpose for which it was intended. At the time of the accident there were no clothes hung out, but a line extended from plaintiff's back window to the pole, and at least one of the boys was swaying on this line, holding the rope in his hands and trying to touch the ground with his knees; and it was at this precise juncture that the pole fell.

The trial court directed a nonsuit on the ground, in substance, that there was "no proof that the pole fell as the result of anything except the strain put on it by the boys in an act which was entirely unanticipated by the landlord." On appeal to the Supreme Court, the judgment of nonsuit was reversed, that court holding in a *per curiam* that the case was within the rule of *Siggins v. McGill*, 72 *N. J. L.* 263, and later cases of the same tenor.

The line of cases adverted to deals with the implied invitation by a landlord to use passages, stairways, &c., intended and maintained by him for the common use of tenants and others visiting them, and the consequent duty of using reasonable care to keep such parts of the premises reasonably safe. It is at least doubtful whether the doctrine is applicable at all in the present case, because it does not seem to follow necessarily from the letting of one floor to a tenant that that tenant's children and their playmates are thereby invited to use the backyard as a playground, and we discover nothing in the evidence to indicate such an invitation. In *Burnett v. Realty Co.*, 90 *N. J. L.* 660, a case very similar on the facts of tenancy, a question called important was whether invitation to use the backyard was inferable, and evidence of an express agreement that the children might play in the yard was relied on.

But passing this question, which apparently was not raised on the trial, and conceding for present purposes that the boys were invited to play in the yard, the case is bare of any evidence tending to show that they were invited to use the pole in their play; and this phase of the case seems to have been overlooked by the Supreme Court.

The rule is thoroughly established in this state that the liability of the owner or occupier of premises who expressly or impliedly invites others to enter thereon is only co-extensive with his invitation; his duty of care is limited by that, and when the limits of the invitation are exceeded, it ceases, except as to acts willfully injurious. The cases of *Phillips* v. *Library Co.*, 55 *N. J. L.* 307, and *Ryerson* v. *Bathgate*, 67 *Id.* 337, are enough to illustrate the principle. To these might be added *Furey* v. *New York Central Railroad Co.*, 67 *Id.* 270. In the Phillips case, plaintiff used a path not regularly laid out, and saved a nonsuit only because the path she did use was a beaten track, justifying an inference by the jury that it was held out as proper for her to use. In the Ryerson case, plaintiff, instead of putting her cat through the door opened expressly for that purpose, undertook to go through herself and was injured. A nonsuit was sustained on the ground that she had exceeded the limits of her invitation. In the Furey case, the plaintiff was similarly barred because the opening between cars was not held out expressly or impliedly as one for him to use.

The rule has been uniformly applied by our courts in cases where some structural appliance has given way, and injury has resulted. The question in each case is, was the party injured invited, expressly or by implication, to make use of the appliance, whatever it was, in the way in which he did use it? If he was, a duty of care was raised; otherwise not.

In *New York and New Jersey Telephone Co.* v. *Speicher*, 59 *N. J. L.* 23, in the Supreme Court, plaintiff, a telephone lineman, climbed a pole to do some work, and relied for support upon a cross-arm, which broke with him. A judgment for plaintiff was reversed, the court saying that the sole

object of the cross-bars was to carry the wires, and while the company was under a duty to use care that the poles should not fall under a lineman's weight, it was under no such duty touching the cross-bars. The duty as respects the pole itself was considered by this court in *Moersdorf* v. *New York Telephone Co.,* 84 *N. J. L.* 747, and the two cases well illustrate the distinction between keeping within and overstepping the limits of the invitation.

Another illuminating case is *Saunders* v. *Eastern Hydraulic Brick Co.,* 63 *N. J. L.* 554, in this court. The plaintiff was repairing a skylight on defendant's roof, and put so much of his weight on the framework of the skylight that it broke with him. We said (at *p.* 556) :

"But the purpose of the mullion in this skylight was to aid in the support of the panes of glass. The master's duty was to have it so constructed as to reasonably answer that purpose, but it is impossible to discover any ground in reason for imposing upon the master any duty to have it so constructed as to bear the weight or any part of the weight of a servant, although engaged in repairing it." A nonsuit was sustained. So, also, in *Carey* v. *Gray,* 98 *N. J. L.* 217, where plaintiff exceeded the bounds of his invitation by undertaking to use a disused privy in the backyard.

In *Smith* v. *Mountain Ice Co.,* 74 *N. J. L.* 26, in the Supreme Court on rule to show cause, the plaintiff, handling ice on a runway, slipped and fell back against a railing which gave way with his weight. The trial court, in charging the jury, assumed that the rail had been placed there for plaintiff's protection, but the Supreme Court held that it was no more than a jury question whether the railing had been intended and furnished to meet such a strain, and sent the case back for a new trial.

In the case at bar, the evidence raises no such question. Obviously, a clothes pole is not erected in the backyard of a tenement, and clothes lines extended thereto, for boys to swing on. If one of these boys had been sliding down the baluster rail of the front stairs, and it had broken with his weight, or if he had climbed to the top of the pole and it

had fallen with him, we venture to say that no court would hold that there was any duty of the owner to provide a stair rail that would hold a sliding boy, or a clothes pole that would be appropriate and adequate for him to climb.  If the boys were invited to use the yard, and the pole had broken under the strain of a normal amount of clothes on the lines, a different case would be presented; but we are unable to see in this case anything beyond a use of the pole for a purpose never contemplated by the defendant, and as to which use he was under no duty of care.

Nor was any duty raised by reason of the tender age of deceased.  That point is disposed of in the case of *Faggioni* v. *Weiss, ante p.* 157, decided at the present term.

For the reasons stated, the nonsuit was right.  The judgment of the Supreme Court will therefore be reversed and that of the Circuit Court affirmed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, PARKER, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, JJ.    10.