WILKINSON, Appellant, v. WEBB-CARTER SHOE CO., et al., Respondents.

(233 N. W. 291.)

(File No. 6940.   Opinion filed December 5, 1930.)

*Van Slyke & Agor,* of Aberdeen, for Appellant.

*Williamson, Smith & Williamson,* of Aberdeen, for Respondents.

BROWN, P. J. At the time material to this action, defendant, D. H. Carter, a resident of Illinois, owned a two-story brick building facing west on Main street in the city of Aberdeen. Adjoining it on the south, with a party wall between the two buildings, was a building owned by Aberdeen Hardware Company. Access to the second story of both buildings was by a stairway from Main street in front between the two buildings. The ground floor and basement of the Carter building was leased to defendant, Webb-Carter Shoe Company. The entire second story was leased to the Odd Fellows' Lodge. In the front or west end of the second floor five rooms were partitioned off, in three of which the janitor, employed by the Odd Fellows, lived, the fourth was occupied as a cardroom, and the fifth as a kitchen, by the Odd Fellows. The remainder of the second story was occpied as a lodgeroom. The second story of the Aberdeen Hardware Company's building was occupied as a Legion Hall by the American Legion. The Odd Fellows' lease, in addition to granting the use of the entire second floor, expressly provided that the lessee should have the right to the use of the entrance and stairway from the front of the building to the rented premises for the purpose of getting to and from said premises. It further provided that the lessee should have the right to sublet the premises or any part thereof to other lodges for lodge purposes. The lessor agreed to furnish heat for the premises from September 1st until May 1st following in each year. In the east end of the building there was a freight elevator shaft leading from the second floor to the basement and situated so that the partition wall if extended would have passed through the center of the elevator shaft; one-half of the elevator shaft being a projection into the Legion Hall, and the other half a projection into the Odd Fellows Hall. A door in each projected part gave access to the elevator from the Legion Hall on one side and from the Odd Fellows Hall on the other side. The walls of the projec-

tion reached the ceiling, entirely inclosing the elevator shaft. Inside the door in front of the elevator shaft on the Odd Fellows' side there was also a gate that could be raised and lowered, and, when raised, could be rested on a bracket and thus left open. This gate had been continuously up and never lowered for at least two years prior to the accident hereafter mentioned. Fred Schuneman was janitor for the Odd Fellows, and was employed by Carter, who was vice president and one of the directors of Webb-Carter Shoe Company, to tend the furnace in the basement, and used the freight elevator in going from the second floor to the basement to tend the furnace. The Odd Fellows had subleased the hall for one night a week to the Knights of Pythias; the sublease having been made on behalf of the Knights by plaintiff, who was master-at-arms and trustee of the order at Aberdeen. Plaintiff was present at a meeting of the Knights two or three weeks prior to the occasion on which he sustained the injuries for which this action is brought. Some disturbance was then caused by boys playing and calling to each other in the Legion Hall. To stop this, Ed Glau, Chancellor Commander of the Knights, twice left his chair and went to the door leading to the elevator, and, opening it, requested the boys to be quiet. The noise continuing, he went a third time, passing across the elevator, which was in place, and into the Legion room, and asked the elder persons there to keep the boys quiet. Plaintiff saw Glau disappear through the door on this latter occasion, but says he did not see beyond the door in the Odd Fellows Hall, and claims that he did not know there was any elevator or shaft there. On the evening of January 24, 1928, another meeting of the Knights was to be held, and plaintiff again was present. When he arrived at the hall, George Anderson, another officer of the lodge, and the janitor, were the only persons present. Anderson went into the cardroom, and the janitor went to the elevator, unobserved by plaintiff, and descended to attend the furnace. He closed behind him the door leading from the hall to the elevator shaft. Shortly after he had descended, defendant claims he heard a noise at the back of the hall similar to what he had heard on the occasion two or three weeks previously when the boys were playing in the Legion Hall. He says he went back to investigate, and, thinking that the door leading to the elevator was simply an entrance leading to the Legion Hall, he opened it, and, without

looking, walked into the elevator shaft and fell to the basement and was injured. To recover damages for his injuries, he brought this action, and, from judgment on a directed verdict in favor of both defendants and from an order denying a new trial, he appeals.

█ It is clear that there is no liability on the part of Webb-Carter Shoe Company. That company leased only the basement and the ground floor. It had nothing to do with the second floor. It did not employ Schuneman, and had no control over his use of the elevator or the entrance thereto on the second floor.

█ Taking up the question of Carter's liability it is to be observed that the elevator was neither designed nor used for passenger service. It was designed exclusively to be used as a freight elevator to take goods to and from the basement, principally for the convenience of the stores on the ground floor, but was also used to some extent by the janitor in taking supplies to the lodgerooms on the second floor, and removing garbage and other refuse therefrom. There was no invitation, express or implied, for the public or any member of any of the fraternal orders leasing the hall, to use it. It does not appear that any one but the janitor had ever used it at the second floor, nor does it appear that the door opening into the elevator room had ever been opened by any but the janitor except on the occasion when Glau opened it two or three weeks before the accident. Plaintiff did not know whether or not Glau knew of the elevator and took the precaution to see that it was in place before undertaking to cross to the Legion Hall on that occasion. The front stairway was expressly mentioned in the lease as the way to be used for access to and from the premises rented by the Odd Fellows. It is contended by counsel for Carter that plaintiff, in entering through the door into the elevator shaft was a trespasser, and therefore went there at his own risk. While the lease held by the Odd Fellows included the entire second story of the building, the sublease held by the Knights of Pythias was only of the hall. The sublease was verbal, and was concluded between plaintiff, as an officer of the Knights of Pythias, and one of the officers of the Odd Fellows. Plaintiff said he was right in the hall when he rented it. It seems reasonable to assume that plaintiff should have known what he was renting, and that he should have found out to what the various doors of the hall led if he supposed that the Knights of Pythias were entitled to make use of the rooms

or space into which such doors opened. But it is not claimed that the Knights had any right to the use of anything but the hall and the cardroom and kitchen, and the right of access to those places by means of the stairway leading from Main street. Plaintiff therefore was technically a trespasser in going through the doorway leading through the elevator shaft. The usual and ordinary means of access to the Legion Hall as well as to the Odd Fellows Hall was from the landing at the top of the stairway. There were ceiling lights in the main part of the hall that would to some extent have lighted the space in which the elevator shaft was. Plaintiff knew where the switches to those lights were, and could have turned them on. He says only the light toward the west end was turned on, that towards the east end of the hall was not, and that, when he opened the door leading into the elevator shaft, everything was dark, he could not see anything; that he did not make any effort to find out whether or not it was safe to go in, simply opened the door and walked in. In so far as the occupancy of the hall is concerned, plaintiff was in the position of an invitee, but the liability of the owner of the premises to an invitee who enters thereon is only coextensive with his invitation, and, when the limits of the invitation are exceeded, his duty to the invitee is only that of abstaining from acts willfully injurious. Gavin v. O'Connor, 99 N. J. Law, 162, 122 A. 842, 30 A.L.R. 1383. Plaintiff was an invitee in the hall, but he sustained no injuries while remaining in the hall. It was when he went beyond the hall that he was injured. Carter, the owner of the premises, was required to abstain from wilfully doing anything that was injurious to one lawfully using the hall. But maintaining a doorway leading to the elevator without having the same labeled or any warning notice on or near the door was not doing anything willfully injurious to those using the hall. Carter had no reason to anticipate that any member of the orders using the hall would use the elevator, and certainly had no reason to anticipate that any person would open the door and enter the elevator shaft for any purpose other than using the elevator. Entrance to the shaft was securely closed by a latched door, which effectually precluded the possibility of any one making ordinary use of the Odd Fellows Hall from falling into the elevator shaft. Plaintiff's own testimony that when he opened the door everything beyond was so dark that he could not see anything, and that nevertheless, without taking any

precaution whatever or making any effort at all to find out whether or not it was safe to go in, he walked in and fell down the shaft, in our opinion shows that he was guilty of contributory negligence which precludes any right to recover against defendant Carter.

The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.