HENRY JOHNSON, Respondent, v. FRED E. MAU, Appellant.

(236 N. W. 472.)

Opinion filed March 27, 1931.  Rehearing denied May 19, 1931.

*Kvello & Adams,* for appellant.

758

*Charles G. Bangert,* for respondent.

Burke, J. This is an action for personal injury. At the close of plaintiff's testimony there was a motion for a directed verdict which was overruled. At the close of all of the testimony there was a motion for a directed verdict and also a motion to dismiss the case on the ground of failure of proof, which motions were overruled and after verdict the defendant moved for judgment notwithstanding the verdict or for a new trial, which motion was overruled and the defendant appeals from the order of the district court denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Defendant owns and operates a garage at Enderlin, North Dakota, fifty by seventy-five feet. The office is in the northwest corner of the building and there is a freight elevator diagonally across in the southeast corner of the building. On the west side and adjacent to the south end there is a door through which automobiles pass, a distance of thirty feet to the elevator where they are elevated to the second floor for repair. Sometimes the owner of an automobile brought there for repair will drive right into the garage through this door on the west side and on to the elevator, and frequently will stay in the car until

it reaches the second floor. This elevator is used for no other purpose except to elevate cars to the second floor for repair and it is always run or operated by the employees at the garage. There are two, two-hundred candle-power electric lights, each with reflectors, for lighting the garage at night. They are about in the center of the garage east and west and one light is from twenty-five to thirty feet from the south end of the garage. The elevator in the garage is enclosed on three sides and on the west end of the elevator and facing the door which was thirty feet away there are double doors and on each side of each door there was a placard upon which appeared in one line "Danger," in another line "Keep Out," and in a third line "Elevator Shaft."

The plaintiff had made arrangements with the defendant for the use of a Ford car and he came to the garage in the evening and found the employees at the garage putting gas and oil in the car. He said:

"One of the men brought the car up there and put in gas and oil—in front of the garage, . . . and I was getting tired of waiting and I went up to one of the men and told him to tell me where the water is—I will get it myself, and he said to go back in the corner of the garage. . . . There was another fellow there fixing a car in the center of the garage—I said, where's the water—and he said back in the back, in the corner of the garage.

"Q. Now, you walked up to the elevator shaft, was there a light in the building? A. No, not in the back—it was light in front. . . . There was no door there that I could see—I didn't pay no attention to the door—that was open. . . . I found out afterwards it was a door. I entered the building from the front door; I first went to the corner and couldn't find the water." (This corner was marked by witness with an "X." It was thirty feet from the elevator and is the place to which he was directed and where the water was.) "The rear door on the east side I noticed was open, swung up against the wall. I then walked about half way to the elevator shaft and I said it must be over here towards the elevator shaft. I did not see any sign on the doors."

On cross-examination he testified:

"I had never been in the back part of the garage at any time previous and didn't know where the water was. It wasn't really dark—it was light in front—but it was quite dark in the back. They told me the

water was in the corner of the garage. . . . I didn't see no sign of any way of getting water there. . . . And then I went looking for it myself. I went across the north end of the garage approximately thirty feet and that is where I fell in the hole. . . . I don't remember whether it was dark that night. So far as I know I don't remember how many lights there were in the garage.

"Q. Well, there were at least two? A. Yes.

"Q. About where you have marked the word 'light' on this exhibit one? A. Yes.

"Q. Now, where were those lights—in the floor, ceiling or wall? A. In the ceiling.

"Q. In the ceiling—yes—about how high was the ceiling—would you estimate? A. Oh I don't know.

"Q. Ten feet—twelve feet—fifteen feet—would you guess? A. About—between eight and ten, I think. . . . I was in a hurry that night; my children wanted to go to the skating rink and I said, if you'll tell me where the water is I'll get it myself. I took up the bucket and went for the water. One of the men was fixing a car inside. I asked him where the water was. . . . I couldn't see no sign of water there—I wanted to make sure that I found out where the water was. I says, where's the water? And the other man told me where it was. He was about in the center of the garage. I had no trouble seeing him or the car. He says, in the corner back in the garage. . . . I went back in the corner which is marked "X" in exhibit one. When I talked with Maurice (the employee who was repairing a tire) I could see the back of the building. I could see the door over near.

"Q. No trouble seeing that, was there? A. No.

"Q. And you could see the back of the garage? A. Yes. . . . I could see the partition over here on the north side, where the elevator shaft is; didn't see no door in the elevator side of the garage. When I couldn't find the water I thought maybe he meant the other corner, so I walked across along the end of the garage. . . .

"Q. Yes—and so you walked across along the end of the garage—until you fell in the hole? A. I walked up to there.

"Q. Did you stop? A. I stopped and looked at that—what I thought was the pipes.

"Q. And did you see a door there at all? A. There wasn't no door there.

"Q. No door at all? A. I didn't pay any attention to a door. I didn't pay no attention to a door at that time. . . . But I had seen the partition at the north end of the elevator shaft. I seen it then, and I saw the back end of the garage. . . .

"Q. Now, what did you think was between this partition and the back end of the garage? A. Well, it looked to me like it was—the place where he keeps oil and water.

"Q. Yes—pitch dark in there, wasn't it? A. Yes.

"Q. And you went right into it, just the same? A. I thought there was a floor, in there. . . . I didn't see any sign up—why there should be any reason why it should be danger. . . . It was dark in back; I seen the sign after the accident on the door. It was on that side of the door (indicating to the right). I didn't see why I had to pay any attention to what was there in that corner. I wasn't familiar back in there. . . ."

It is the contention of appellant that plaintiff's testimony shows affirmatively that he was guilty of contributory negligence and cannot recover. From his testimony it appears that he went to the garage on the evening of the accident; that an employee had the car which plaintiff was to use in front of the garage; that plaintiff was in very much of a hurry and while the defendant's employee was putting gas and oil in the car the plaintiff volunteered to go and get water asking defendant's employee where to find it. He apparently got the proper instructions, picked up the bucket and started for the water going in through the front door. In about the center of the garage he found another employee fixing a tire on a machine; he asked him where to find the water and was directed to a corner of the garage. He could see at that time from the center of the garage to the back end of the garage. He saw the rear door which was swung up against the side of the building. He didn't find the water and then he started out to look for it himself. Without inquiring any further he walked across the back end of the garage to the elevator shaft. He could see the cables inside in the shaft; he could see the partition on the south side of the shaft, but he didn't see any door or a sign of any door. He said he thought it was a place where they kept oil and water. It

couldn't have been altogether dark in the shaft or he couldn't have seen the cables but it was no doubt dark looking down in the shaft. He stepped right in the shaft without any further investigation or seeking the information which he could have got immediately from the man who was repairing the automobile tire in the center of the garage. The question is, was there such a lack of ordinary care upon the part of the plaintiff that reasonable minds cannot differ on the question of his negligence?

In a recent case of Medcraft v. Merchants Exch. — Cal. —, 295 Pac. 822, the facts appear in the syllabus as follows: "It appeared that visitor in office building, after transacting business with tenant, passed down corridor seeking wash-room, and finding plain door bearing no invitational sign and entering, found himself in dimly lighted antechamber with swinging door leading into larger lighted room. Thinking washroom must be at some other place, he turned to another door on his right which stood ajar, there being sufficient light to make darkness visible within area to which last-mentioned door led, and proceeding towards aperture, moving in total darkness, and in attempting to set foot on supposed floor, he plunged into air shaft and was injured." In that case the court held that the plaintiff was guilty of contributory negligence as a matter of law. The court said: "It is well recognized that a person may be an invitee in a portion of a building and not enjoy that status as to other portions thereof. Powers v. Raymond, 197 Cal. 126, 239 Pac. 1069; Peebles v. Exchange Bldg. Co. (C. C. A. 6th) 15 F. 2d ed. 335; State Comp. Ins. Fund v. Allen, 104 Cal. App. 400, 285 Pac. 1053."

In the case of F. W. Woolworth Co. v. Davis (C. C. A. 10th) 41 F. 2d. 348, the court said: "It is frequently stated that the authorities are in conflict as to whether it is contributory negligence, as a matter of law, to step into an open elevator shaft or pit. An examination of the cases indicates that the conflict may be more apparent than real. In the following cases such an act was held to be contributory negligence, as a matter of law. Among these cases are situations where it was light, where it was dark, and where it was in between. Among them are cases where the servant had reason to believe the elevator was where he supposed it to be." Greenwell v. Washington Market Co. 21 D. C. 298; Darrow v. The Fair, 118 Ill. App. 665; McDonnell v.

Illinois C. R. Co. 105 Iowa, 459, 75 N. W. 336; Meister v. Alber, 85 Md. 72, 36 Atl. 360; Taylor v. Carew Mfg. Co. 143 Mass. 470, 10 N. E. 308; Caniff v. Blanchard Nav. Co. 66 Mich. 638, 11 Am. St. Rep. 541, 33 N. W. 744; Page v. New York Realty Co. 59 Mont. 305, 196 Pac. 871; Maxwell v. Thomas, 31 App. Div. 546, 52 N. Y. Supp. 30; Malaverneri v. Turner Constr. Co. 141 App. Div. 360, 126 N. Y. Supp. 303; Williams v. Trecartin, 166 App. Div. 745, 152 N. Y. Supp. 340; Hurley v. Lukens Iron & Steel Co. 186 Pa. 187, 40 Atl. 321; Cutler v. Kolb Bakery Co. 273 Pa. 59, 116 Atl. 518; McCann v. Atlantic Mills, 20 R. I. 566, 40 Atl. 500, 4 Am. Neg. Rep. 344; Leahy v. United States Cotton Co. 28 R. I. 252, 66 Atl. 572; Missouri K. & T. R. Co. v. Barnes, 37 Tex. Civ. App. 645, 85 S. W. 1006; Jones v. Moran Bros. Co. 45 Wash. 391, 88 Pac. 626."

The court quoted from the case of De Honey v. Harding (C. C. A. 8th) 300 Fed. 696, and 699, as follows: "The law requires a person to make reasonable use of his faculties to observe and avoid danger, and conclusively presumes that he knows what he would have known, had he made ordinary use of his senses. . . . It seems clear that plaintiff simply hurried out of her room, and, without paying any attention to where she was going and without using her senses, walked into this darkened stairway. We cannot escape the conclusion that plaintiff, as a matter of law, was guilty of negligence which contributed to the proximate cause of the injuries for which she seeks recovery." And then continues: "The evidence indisputably shows that the plaintiff did just this thing; he hurried into this elevator shaft 'without paying any attention to where he was going and without using his senses.' Conceding that the circumstances modified the degree of care required of him, it did not relieve him from the exercise of any care; the exercise of the slightest attention to where he was stepping would have avoided the accident. The parental precept of unnumbered generations, 'Look where you are going,' is a sound standard of conduct, which has become crystallized into a rule of law which compels a reversal of this case."

In the case of Wilkinson v. Webb-Carter Shoe Co. — S. D. —, 233 N. W. 291, the South Dakota court said: "He. (plaintiff) says only the light toward the west end was turned on, that towards the east end of the hall was not, and that, when he opened the door leading

into the elevator shaft, everything was dark, he could not see anything; that he did not make any effort to find out whether or not it was safe to go in, simply opened the door and walked in. In so far as the occupancy of the hall is concerned, plaintiff was in the position of an invitee, but the liability of the owner of the premises to an invitee who enters thereon is only co-extensive with his invitation, and, when the limits of the invitation are exceeded, his duty to the invitee is only that of abstaining from acts wilfully injurious. Gavin v. O'Connor, 99 N. J. L. 162, 30 A.L.R. 1383, 122 Atl. 842. Plaintiff was an invitee in the hall, but he sustained no injuries while remaining in the hall. It was when he went beyond the hall that he was injured. Carter, the owner of the premises, was required to abstain from wilfully doing anything that was injurious to one lawfully using the hall. . . . Plaintiff's own testimony that when he opened the door everything beyond was so dark that he could not see anything, and that nevertheless, without taking any precaution whatever or making any effort at all to find out whether or not it was safe to go in, he walked in and fell down the shaft, in our opinion shows that he was guilty of contributory negligence which precludes any right to recover against defendant Carter."

In the case of Massey v. Seller, 45 Or. 267, 77 Pac. 397, 16 Am. Neg. Rep. 553, the Oregon court said: "Where one who was in a strange building saw a dark place in a corner, and, thinking there might be a water closet there, walked into the corner without determining what was there, and was injured by falling down an open elevator shaft, he was guilty of contributory negligence, precluding recovery."

In the case of Evans v. Orttenburger, 242 Mich. 57, 217 N. W. 753, the Michigan court said: "The law requires that normal persons of mature years, possessed of their faculties, should exercise them for their own protection. This the plaintiff failed to do, but relied on the assumption that 'in a business place things are supposed to be safe.' . . . It is our view that the plaintiff was guilty of contributory negligence, and therefore cannot maintain her action."

In the case of Central Pub. House v. Flury, 25 Ohio App. 214, 157 N. E. 794, the Ohio court said: "Darkness is nature's own warning to arouse the natural instinct of self-protection, the first law of nature.

Indifference to such an instinct is a clear violation of a fundamental physical law, and should be, under circumstances like those of the instant case, more impressive and convincing than a sign 'Danger,' nailed on the door. Darkness was a danger in the instant case that stood gaunt and menacing in front of the eyes of the plaintiff, and under such circumstances as appear in this record to enter the shaft is, in our judgment, such contributory negligence as should prevent a recovery in law To hold a contrary doctrine would be to declare that in times and places of danger a person is not responsible for the proper use of his faculties, and so to decide would be to say that one is not held to the exercise of reasonable care and prudence."

In the case of Mullen v. Sensenbrenner Mercantile Co. — Mo. —, 33 A.L.R. 176, 260 S. W. 982, the Missouri court said: "A customer is negligent in leaving a store without looking where she is walking, so as to prevent holding the storekeeper liable for injuries caused by her fall on the tile entrance, where she observed on entering that the tile was smooth and had a small crack in it, and that the entrance had a slight incline, which she knew might be dangerous to walk down." See also the exhaustive notes following the decision in 33 A.L.R. 181.

In Greenwell v. Washington Market Co. 21 D. C. 298, the court said: "A market company cannot be held liable for injuries sustained by a visitor on the premises who fell down an unlighted elevator shaft in a dark courtyard when he stepped therein, thinking it was a water-closet to which he had been directed by some person not connected with the defendant company, since, in stepping into the shaft without determining whether or not it was the place he was looking for, he was guilty of gross negligence."

In the case of Johnson v. Washington Route, 121 Wash. 608, 209 Pac. 1100, the Washington court said: "The law requires a person to use his faculties, if he can reasonably do so, and his failure to so do, if it contributes to the injury, will prevent a recovery, and a person will be deemed to have actually seen what could have been seen if he had looked." To the same effect see Seabridge v. Poli, 98 Conn. 297, 119 Atl. 214.

The plaintiff relies upon the case of Reese v. Abeles, 100 Kan. 518, L.R.A.1917E, 747, 164 Pac. 1080. This decision, however, is on an entirely different state of facts. The plaintiff was in the defendant's

store as a customer. Her attention was attracted to some goods on the shelves and she talked with the defendant about them. He said: "Just step around there and look and you may find what you want back there." The place indicated was dark owing to stacks of goods nearby. As the plaintiff walked in the direction indicated she walked into an open stairway on the floor partially obscured by the darkness and was injured. In that case the plaintiff was specially invited by the defendant to go back into the darkness and as a matter of course she had a right to believe that it was perfectly safe for her to accept the invitation. In that case it was held that under the circumstances the plaintiff was not guilty of contributory negligence at all and that the defendant was negligent in failing to warn the plaintiff of the presence of the open stairway.

In the case of Kinsey v. Locomobile Co. 235 Pa. 95, 83 Atl. 682, the court said: "Where there was evidence that plaintiff was a chauffeur in the employ of a customer of the garage, of which defendant was the owner, that he was lawfully on the premises, and without negligence on his part fell down an elevator shaft which defendant had negligently left unguarded, a verdict for plaintiff was justified." In that case the question of the plaintiff's negligence was properly submitted to the jury.

In the case of Loney v. Laramie Auto Co. 36 Wyo. 339, 53 A.L.R. 73, 255 Pac. 350, the Wyoming court said:

"Garage keeper is not bound to warn invitee of peril and risk, which is open and obvious and is or should have been appreciated by man of ordinary prudence. . . . The liability of the keeper of premises and the right of protection of an invitee may, of course, be a limited one, and cannot go beyond the invitation. There are numerous cases to that effect, many of them holding that an invitee goes beyond the scope of and violates the invitation when he goes into some part of the premises where he is not invited, and where the purposes of his visit do not warrant him to go. Gavin v. O'Connor, 99 N. J. L. 162, 30 A.L.R. 1383, 122 Atl. 842, 20 R. C. L. 67–69; 29 Cyc. 452. The duty to protect an invitee is necessarily coextensive with the invitation, though no further. The invitation need not be express; it may be implied. And unless it is in some manner limited, the character and purpose of the visit must necessarily control." In this case, however,

the court held that the question of the contributory negligence was for the jury.

In Hamblet v. Buffalo Library Garage Co. 222 App. Div. 335, 225 N. Y. Supp. 716, where plaintiff, after leaving his automobile in defendant's public garage for storage, asked defendant's employee where to find a toilet, and while following employee's directions was injured by falling down unlighted steps, of which he had not been warned by employee, *held,* that defendant was prima facie liable for negligence, and the question of defendant's negligence and plaintiff's contributory negligence *held* questions of fact for the jury, in view of the unlighted condition of the stairs. In this case it will be noted that the plaintiff was following the directions of an employee. The question of contributory negligence is usually a question for the jury but it is well settled that when it appears affirmatively from the testimony of the plaintiff that his contributory negligence is so clear that reasonable minds cannot differ but must conclude from the evidence that there was contributory negligence, then it is a question of law for the court. Dahl v. Minneapolis, St. P. & S. Ste. M. R. Co. 57 N. D. 538, 223 N. W. 37; Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 687, 215 N. W. 158; Haugo v. Great Northern R. Co. 27 N. D. 268, 145 N. W. 1053; Ferm v. Great Northern R. Co. 53 N. D. 543, 207 N. W. 39.

In the instant case the plaintiff's evidence shows that he was in a great hurry that night and while the employee of the defendant was putting oil and gas in an automobile out in front of the garage he volunteered to get the water and was directed to where the water was back in the corner of the garage. He went in by the front way, stopped and talked with an employee who was repairing a tire under a two hundred candlepower electric light and about twenty-five or thirty feet from the back end of the garage; he was also told that the water was back in the corner of the garage. He must have clearly understood the directions for he went back into that corner where the water was located. Not seeing the water there, he spent no time in looking for it and according to his own testimony he ignored the instructions given to him by the employees and said: "I then went looking for it myself. When I couldn't find the water I thought maybe he meant the

other corner so I walked along across the end of the garage. It was pitch dark in there. I thought there was a floor there. I saw the sign after the accident. It was on that side of the door." It was no part of the plaintiff's duty to get the water; that was the duty of the employee who was conditioning the automobile for the plaintiff. But assuming that the plaintiff was an invitee for the purpose of getting the water, his invitation was limited to that purpose and if he had followed the direction of the employees he would have gotten the water and have been entirely safe. Or if he had asked the employee who was repairing the tire only a short distance from him before he stepped into the elevator shaft, he would have gotten the information and would not have been injured. He went beyond the scope of his invitation when he started out to look for the water himself and without making any inquiry or taking any precaution by the exercise of any of his faculties he stepped out into the darkness. Surely reasonable minds cannot differ on the question of his contributory negligence and it follows that the defendant's motion for judgment notwithstanding the verdict should have been granted. The order overruling defendant's motion is reversed and the case is remanded with directions to enter judgment for the defendant notwithstanding the verdict.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.