### KELLER
### v.
### ELKS HOLDING CO. et al.
### No. 14805.

United States Court of Appeals,
Eighth Circuit.

Jan. 25, 1954.

Lanier, Lanier & Knox, Fargo, N. D., and Sharp & Saetre, Moorhead, Minn., for appellant.

Conmy & Conmy, Fargo, N. D., for appellees, Elks Holding Co. and Fargo Lodge No. 260 Benevolent & Protective Order of Elks.

Nilles, Oehlert & Nilles, Fargo, N. D., for appellees, Meinecke-Johnson Co., and its individually named partners.

Before JOHNSEN and COLLET, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

■ This is an appeal by plaintiff from a judgment for the defendants notwithstanding the jury's verdict for the plaintiff in a negligence action brought to recover damages for personal injuries. The trial court ruled that plaintiff was, as a matter of law, contributorily negligent. On appeal, this Court views the evidence and the reasonable inferences

therefrom in the light most favorable to the verdict—here, in the light most favorable to the plaintiff.

This action is occasioned by injuries received by the plaintiff, James A. Keller, on November 16, 1950, when he fell down an elevator shaft in the building owned by the defendant Elks Holding Company, a corporation, and occupied by the defendant Elks Lodge of Fargo, North Dakota, a corporation. The Meinecke-Johnson Company, a co-partnership engaged as general contractors by the two Elks corporations to make extensive alterations to the Elks Building in Fargo at the time the accident in question happened, also was made a defendant.

The plaintiff was a member of the Elks Lodge of Fargo, North Dakota, on November 16, 1950, and attended a turkey raffle conducted by that organization at the Elks Building during the evening of that day. He arrived at the Club between six and seven o'clock P. M. During the approximately two and one-half to three hours thereafter when plaintiff was in attendance at the turkey raffle and other games, he consumed a dinner and four to five drinks of bourbon and water, but he states, however, that he was not intoxicated. During the evening he partook in a game sponsored by the Club and won three cans of chicken. At some time between 9:30 and 10:30 P.M., he decided to leave the Club. He put on his overcoat, placed a can of chicken in each pocket and carried the third can in his hand. As he was about to leave the Elks Building, he noticed a sign posted on the bulletin board in the lobby which stated that members having clothes or other items in the lockers should remove them from the lockers. Plaintiff had seen the sign several times prior to his observance of it that evening, and the sign had been posted for at least 60 days. He decided that he would remove his belongings from his locker that evening. He was aware that the building was undergoing major alterations in and about the locker room.

The locker room was located in the sub-basement of the building in a portion which was east of the south half of the main gymnasium. The normal manner of reaching the locker room prior to the reconstruction was to proceed down the stairway to the sub-basement at which point the stairs faced in a westerly direction and opened into the main gymnasium. From the foot of the stairs one would proceed westerly for five to six feet through the gymnasium doors and once through the doors would turn left and proceed in a southerly direction, walking through the gymnasium, for some 50 feet to the entrance to the locker room. However, the sub-basement had been materially altered by the reconstruction and the gymnasium had been divided into rooms separated by partitions; and though the locker room was located in the same area of the sub-basement as it was before the reconstruction, the alterations which had been made blocked the usual route to the locker room. While plaintiff was generally familiar with the layout of the sub-basement prior to the reconstruction, the substantial alterations had been made subsequent to his last visit to the sub-basement so that on the evening of the accident he was not familiar with the layout of the sub-basement as it then existed.

On the evening of the accident, plaintiff proceeded down the stairway to the sub-basement at which point the stairway faced west as it had before the reconstruction; then he proceeded straight ahead from the foot of the stairs in a westerly direction for some five to six feet through the gymnasium doors, as always, and into the gymnasium which was fully lighted. Turning to his left (south) to go to the locker room, plaintiff observed a tile wall which extended east and west across the gymnasium, but he failed to observe two doorways in such tile wall. Plaintiff became confused by the situation confronting him and instead of proceeding south toward the locker room, he turned again to the west and proceeded across the gymnasium floor for some 40 to 50 feet until he came upon a metal door in the west wall of the gymnasium; prior to the reconstruction, there had

been no doorway in this wall. This door was new and plaintiff had never seen it before; the door, in fact, opened upon an elevator shaft which had been dug outside of the west wall. There were no danger signs or barricades on this door; nor was the door locked, although it was closed. Plaintiff opened the right side of the double door toward him, and could see nothing on the other side but darkness. He admits that he was wholly unacquainted with the situation but presumed that he was opening the gymnasium door through which he had, in fact, already passed some 40 to 50 feet back. After he opened the door, he reached for the light switch which he believed to be on the other side of the door and in so doing, he took one step forward and fell some five feet into the bottom of the elevator shaft and incurred the injuries complained of in this action. His testimony illustrates the situation with which he was confronted and the care he exercised under the circumstances:

"Q. Mr. Keller, from your testimony, it appears that you were looking for the gymnasium? A. That is right.

"Q. What kind of door was on the gymnasium? A. There was no door on it. There might have been some door, I don't recall. There was not any gymnasium door there anymore. I had not been near the buildling for a couple of weeks while it was under construction, and all that had been changed.

"Q. Do you know when that had been changed, how long before the accident? A. No, I don't.

"Q. When was the last time that you were in the locker room? A. Perhaps six or eight months before the construction ever started on it.

"Q. When you got to the sub-basement, were you confused as to the arrangement down there? Did it seem different? A. It was different entirely, when I remembered it.

"Q. You were not too sure where you were going down there? A.

That is right, I didn't. There was a different setup from what I had seen before.

"Q. Things didn't seem to be in the proper place, as you remembered it before? A. That is right.

"Q. So when you stepped in the elevator pit you were not sure where you were going? A. I thought I was going in the gymnasium.

"Q. But you were not sure where you were going? A. No."

Then after his testimony with respect to his opening of the door and seeing darkness ahead, the following appears in the record:

"Q. Could you see the edge of this pit? A. Could see the concrete or the floor right up to where it was black. There was no light in there. I could not see what was in there.

"Q. I think you testified that you could see there was an asphalt floor? A. Asphalt or tile, I don't know.

"Q. Do I understand you to say you could see the edge of the asphalt floor and beyond the edge of it it was black? A. Yes.

"Q. Could you see anything in there? A. No.

"Q. Couldn't see the bottom of the pit? A. No, I didn't know there was a pit there. I thought it was a room.

"Q. You could not see any floor in there? A. No, it was dark."

He had a cigarette lighter in his pocket which he did not utilize when he opened the door to the elevator pit. That source of illumination was not used until he found himself at the bottom of the pit.

The sole question presented on this appeal is whether the trial court erred in holding plaintiff guilty of contributory negligence as a matter of law. The question of contributory negligence is a question of fact for the trier of fact unless the established or conceded facts from which inferences may be drawn admit of but one reasonable conclusion.

Huus v. Ringo, 1949, 76 N.D. 763, 39 N. W.2d 505; Bagg v. Otter Tail Power Co., 1941, 70 N.D. 704, 297 N.W. 774.

Whether the recited facts and the reasonable inferences therefrom admit of only the reasonable conclusion that plaintiff was guilty of contributory negligence depends upon a consideration of two North Dakota cases: Huus v. Ringo, supra, relied upon by plaintiff, and Johnson v. Mau, 1931, 60 N.D. 757, 236 N.W. 472, relied upon by defendants. It is not urged that either case has been overruled, and it seems conceded that these cases represent the law of North Dakota on the question raised here.

In the Johnson case the court reversed the trial court's denial of defendant's motion for judgment notwithstanding the verdict, and held that plaintiff was, as a matter of law, guilty of contributory negligence. There, plaintiff, while waiting for his car to be serviced in a garage operated by the defendant, asked the location of the water supply. Two garage employees directed him to a back corner of the garage to which plaintiff proceeded; not seeing the water there, he set out to look for the water himself and walked across the back of the garage where he fell into an open elevator shaft. The part of the garage in which the elevator shaft was situated was dark and the plaintiff had not been in the back portion of the garage before and was not familiar with it. The court reviewed decisions from other jurisdictions, and in conclusion said, at page 477, of 236 N.W.,

"He went beyond the scope of his invitation when he started to look for the water himself, and without making an inquiry or taking any precaution by the exercise of any of his faculties he stepped out into the darkness. Surely reasonable minds cannot differ on the question of his contributory negligence, and it follows that the defendant's motion for judgment notwithstanding the verdict should have been granted."

In Huus v. Ringo, the North Dakota Supreme Court indicated that, under the facts present there, the trial court did not err in submitting the question of plaintiff's contributory negligence to the jury, but reversed the verdict for plaintiff on another ground. There, plaintiff fell down an elevator shaft while visiting residents of the apartment building owned by defendant. The elevator opened upon a hall, and immediately beyond the elevator door was a door from the toilet which also opened upon the hall. Plaintiff was not a stranger on the premises, but had been there on several prior occasions and arrived the evening of the accident when the hall lights were burning. During the course of his visit, plaintiff had occasion to use the toilet and stepped out of the apartment into the hall which was then unlighted, and thinking that he knew the location of the toilet, proceeded down the hall but miscalculated and fell down an open elevator shaft; the door enclosing the elevator shaft usually was closed, but for some unaccountable reason was open on that occasion. In stating that the question of plaintiff's contributory negligence properly was submitted to the jury, the court distinguished the case from the Johnson case by saying at pages 514–515, of 39 N.W.2d,

"In Johnson v. Mau, supra, this court held that the plaintiff went beyond the scope of his invitation and entered a dark and unfamiliar place and his acts in so doing barred his recovery on the ground of contributory negligence. Many cases to the same effect may be found in an annotation in 163 A.L.R. 587. In fact, the principle that one who proceeds in the dark in a strange place is guilty of contributory negligence as a matter of law has been frequently applied, but in most cases the elements of darkness and unfamiliarity are both present. The same rule does not apply where the person injured was familiar with the premises which were normally safe and was injured through the presence of an unusual, unknown, and unanticipated condition."

The court in Johnson v. Mau and Huus v. Ringo in discussing contributory negligence emphasized the elements of proceeding in darkness and into a strange place with which the person was not familiar. These elements are established by plaintiff's own testimony herein, in that he admitted that he was totally unfamiliar with the physical layout of the sub-basement as it existed at the time of the accident, and in that upon opening the elevator door which he had not seen before, he faced complete darkness, yet stepped forward while reaching for a light switch without taking any precaution to protect himself. As this Court stated in De Honey v. Harding, 300 F. 696, 699, and which principle is in harmony with the teaching of the North Dakota decisions,

> "The law requires a person to make reasonable use of his faculties to observe and avoid danger, and conclusively presumes that he knows what he would have known, had he made ordinary use of his senses."

We cannot escape the conclusion that plaintiff's own negligence proximately contributed to the injury he received and that his own negligence is so clear that reasonable minds cannot differ thereon.

Plaintiff's reliance upon the fact that the sign on the bulletin board requested members to remove their belongings from the lockers in the gymnasium is only relevant in that it may go to the negligence of the two Elks Club corporations. Such announcement to the members had been on the bulletin board many weeks, and any response thereto did not relieve the members of the duty to exercise reasonable care in view of the circumstances with which they were confronted. The language of the court in F. W. Woolworth Co. v. Davis, 10 Cir., 41 F.2d 342, 350, which the North Dakota court quoted with approval in Johnson v. Mau, "The parental precept of unnumbered generations, 'Look where you are going,' is a sound standard of conduct which has become crystallized into a rule of law * * *" is pertinent here. Under the uncontroverted circumstances herein, the trial court's decision in finding plaintiff as a matter of law contributorily negligent and in granting defendants' motion for judgment notwithstanding the verdict, 109 F.Supp. 545, clearly was correct and is affirmed.