(22 Misc. Rep. 595.)

## OFSCHLAGER v. SURBECK.

(Supreme Court, Trial Term, Onondaga County. February, 1898.)

LANDLORD AND TENANT.

The question whether the occupancy of certain premises belonging to defendant by plaintiff's husband was that of a tenant or of a mere hired man, was properly left to the jury, where the contract of employment provided that such occupant should "keep the part of the house occupied by him and his family in good order," and should pay "house rent at $10 per month," which was from month to month deducted from his wages, and there was evidence that some new arrangement had been made between the parties, but it appeared that defendant had received $10 for the month in question, and had sworn on various occasions that such new arrangement was a lease for such month.

Action by Mrs. Ofschlager against John G. Surbeck for damages for malicious prosecution. There was a verdict in favor of plaintiff, and defendant moves on the minutes to set such verdict aside, and for a new trial. Denied.

William Nottingham, for the motion.
Walter W. Magee, opposed.

HISCOCK, J.　This action was brought to recover damages for an alleged malicious prosecution.　The defendant caused the arrest of plaintiff upon the charge of assault in the third degree.　She was tried and acquitted, and this action brought.　The important question herein—whether defendant had probable cause for instituting said criminal proceedings—is largely dependent upon the character of the occupation had by plaintiff and her husband of a certain house belonging to defendant; for, concededly, upon the occasion complained of by defendant in his criminal proceedings, plaintiff did commit upon defendant what, without justification, would be an assault.　She claims, and the jury had a right to find as it did, that she did whatever was done by her upon that occasion to prevent defendant from entering the house occupied by her husband and herself, and she further claims that she had a right to do so because they were in possession of said house as tenants.　The defendant, upon the other hand, claims that her husband was in occupancy simply as a hired man, and that defendant had retained possession of the premises and therefore had a right to enter, as he was attempting to do; and that there was nothing to justify plaintiff's acts, or to relieve them from the character of an assault such as was charged in his criminal proceedings.

Upon the trial it was left to the jury to determine as a question of fact whether the occupancy of plaintiff's husband was that of tenant or of a mere hired man.　It is insisted by defendant that this was error, and that the court should have held as matter of law that the occupancy was of the latter character.　Consideration of the evidence at length upon this motion, however, convinces me that the disposition made upon the trial was correct, and was as favorable to defendant as he could ask.　Defendant was the owner of a farm of about 45 acres, upon which there was the house in question.　January 6, 1893, a written memorandum was made and signed by defendant and plaintiff's husband, which, among other things, provided as follows:

"The above-named William Ofschlager agrees to work for J. G. Surbeck on his farm ＊ ＊ ＊ from March 1, 1893, to March 1, 1894, and to faithfully perform the duties assigned to him, and keep the part of the house occupied by him and his family in good order.　In return J. G. Surbeck agrees to pay William Ofschlager as follows:　Twenty-six dollars per month for the first eight months, $208.　Twenty dollars per month for the following four months, $80.　In addition to the above, house rent at $10 per month, $120," etc.

So far as the question under discussion is concerned, plaintiff's husband seems to have entered into and continued in the occupation of the house in question under the above agreement until shortly before the month of March, 1896, when the alleged assault of plaintiff upon defendant took place, and, as Ofschlager swears, each month $10 was deducted by defendant from his wages for the house.　The defendant testifies that in February of that year he refused to extend said agreement for another year, but made a new parol agreement.　The details of such agreement are very meagerly stated in the evidence.　The defendant says he told plaintiff's husband that after the

1st of March he could only stay there from "day to day." Plaintiff's husband swears that defendant deducted $10 from his wages for the said month of March for rent of house, and defendant testified upon the subject as follows:

"Q. How much was paid by Mr. Ofschlager for the month of March, 1896, when you settled with him? How much did he pay for the house? A. There was nothing said about paying for the house. Q. Didn't he pay the usual $10 for the month of March? A. No, sir; he never paid it. We allowed so much, the same as we had done. Q. So that $10 was paid by him for this month of March, 1896? (Objected to.) The Court: Was allowed."

In addition, certain declarations of defendant in regard to this last arrangement were proved. In an affidavit filed upon which to procure a warrant against plaintiff he swore that upon the occasion of the alleged assault he "attempted to gain access to a portion of said house [in question] which this deponent had reserved for his own use, having let and rented the other portion to the defendant and her husband"; and subsequently he presented a petition for the removal of plaintiff's husband as a tenant holding over from the premises in question, and in which petition, so made by him, was, among other things, the following allegation: "That on or about the forepart of February, 1896, your petitioner above named as landlord let and rented said real property, house and premises, unto William Ofschlager for the term of one month from the 1st day of March, 1896, which said term has expired." There was no evidence aside from that of the general situation to indicate that the occupation by plaintiff's husband of the house in question was connected with or necessary to the performance of the services which he was hired to perform, or that such occupation was required for the necessary or better performance of the services which he was to perform. If the rights of the parties were to be determined solely by reference to the written agreement heretofore quoted from, I should hesitate to decide as matter of law that Ofschlager's occupancy was simply that of a hired man. Where a person lawfully enters upon premises as a place of abode, and occupies them as such, the presumption is that such occupancy gives possession thereof to him, and does not leave such possession in another,—as, in this case, the defendant, and any less right than that which possession furnishes is dependent upon some understanding, express or implied, denying such relation. Bristor v. Burr, 120 N. Y. 427, 433, 24 N. E. 937. The mere fact that the relation of master and servant existed does not preclude the creation and existence of the other relation of landlord and tenant. It does not seem to me that the occupation of this particular house was so essential to the performance of the services to be rendered by plaintiff's husband, or that it was so much more conducive to that purpose than any other house which he might have paid for, as to settle this question in favor of defendant. But, further than that, the memorandum of hiring, in treating of this subject, expressly provides that the person occupying the house is to keep it "in good order," and that the house rent is to be $10 per month, which rent, it is testified, was deducted from month to month from the wages paid. These latter provisions are all incidents of a lease, rather than of a mere occupancy as a hired man. The allowance or deduction

from wages of a specified sum as rent for the use of premises is always a material circumstance to prove the existence of a lease in such case. McGee v. Gibson, 1 B. Mon. 105, cited; Doyle v. Gibbs, 6 Lans. 184; Kerrains v. People, 60 N. Y. 221–227; People v. Annis, 45 Barb. 304, 306; Doyle v. Gibbs, 6 Lans. 180, 182.

Upon the facts above stated the case seems to be one of a tenancy within the principles laid down in Hughes v. Chatham, 5 Man. & G. 54, and cited with approval in Kerrains v. People, supra. The facts in that case were that a master ropemaker in a royal dockyard had, as such, a house in the dockyard for his residence, of which he had the exclusive use, without paying rent, as part remuneration for his services, no part of it being used for public purposes. If he had not had it, he would have had an allowance for a house in addition to his salary. It was held that the ropemaker occupied as a tenant, and not as a servant, and the court said:

"There is no inconsistency in the relation of master and servant with that of landlord and tenant. The master may pay his servant by conferring upon him an interest in real property, either in fee, for years, or at will, or for any other estate or interest; and, if he do so, the servant then becomes entitled to the legal incidents of the estate as much as if it were purchased for any other consideration. * * * And as there is nothing in the facts stated to show that the claimant was required to occupy the house for the performance of his services, or did occupy in order to their performance, or that it was conducive to that purpose more than any house which he might have paid for in any other way than by his services, and as the case expressly finds that he had the house as part remuneration for his services, we cannot say that the conclusion at which the revising barrister has arrived is wrong."

In this case, however, at the time when the occurrences in question took place there is evidence that the original memorandum had ceased to govern, and that a new arrangement had been made between defendant and his hired man. The details of that arrangement, as described, are more or less indecisive. But it does appear that defendant had received $10 for the occupation of the premises, deducted or allowed from the wages which he paid to plaintiff's husband, and he himself upon various occasions swore, in substance, that this new arrangement was a lease for the month of March. Under these last circumstances it certainly cannot be said that the evidence proved beyond any question an occupancy as a hired man, and that there was nothing to indicate a lease, and no evidence from which, upon that subject, conflicting inferences might not be drawn. If there was any evidence which tended to support the theory of a lease, or which permitted different inferences, it was proper to submit to the jury to find what were the actual relations with reference to this house between the parties. Kerrains v. People, supra; Wood, Mast. & S. (2d Ed.) p. 306; State v. Hayes, 59 N. H. 450; Hanford v. People, 7 Wkly. Dig. 528.

It was also urged upon this motion that the verdict was excessive. It was undoubtedly liberal, but I do not think that it can be said that it was so large as to come within the rules applicable to setting aside verdicts as excessive. The motion for a new trial, therefore, is denied, with $10 costs.

Motion denied, with $10 costs.