(158 App. Div. 299.)

### HICKS v. SMITH et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

1. APPEAL AND ERROR (§ 927*)—PRESUMPTION—NONSUIT.
   On appeal from a judgment of nonsuit, the appellant is entitled to the most favorable inferences that can reasonably be drawn from the evidence, including every fair deduction from the undisputed facts.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

2. LANDLORD AND TENANT (§ 162*)—COMMON PASSAGEWAY—DUTY OF LANDLORD.
   A landlord of an apartment house is bound to keep the common hallways and stairways in good repair.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 629; Dec. Dig. § 162.*]

3. LANDLORD AND TENANT (§ 162*)—REPAIRS—DUTY OF LANDLORD.
   Where a landlord undertakes to make repairs in an apartment house, and permits the same to be occupied by his tenants while such repairs

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

are going on, he is held to a higher degree of care, and is liable for any negligence in making them.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 629; Dec. Dig. § 162.*]

4. LANDLORD AND TENANT (§ 162*)—CONDITION OF PREMISES—LIABILITY OF LANDLORD.

A landlord of an apartment house cannot delegate to another his duty to keep the common stairways in good repair, so as to relieve himself from responsibility.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 629; Dec. Dig. § 162.*]

5. LANDLORD AND TENANT (§ 167*)—INJURY TO GUEST OF TENANT.

A landlord of an apartment house owes the same duty to guests of tenants as he does to tenants.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 668–674, 676–679; Dec. Dig. § 167.*]

6. LANDLORD AND TENANT (§ 169*)—INJURY—SUFFICIENCY OF EVIDENCE.

In an action by a guest of a tenant against the landlord for an injury caused by falling down the stairs of an apartment house, evidence *held* sufficient to take to the jury the question of the landlord's negligence.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 644–646, 664–667, 681–684; Dec. Dig. § 169.*]

7. LANDLORD AND TENANT (§ 169*)—INJURY—CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY.

In an action by a guest of a tenant, for an injury caused by falling down the stairs of an apartment house, against the landlord and a contractor who was making repairs, *held*, under the evidence, that the question of the contributory negligence of plaintiff was for the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 644–646, 664–667, 681–684; Dec. Dig. § 169.*]

8. NEGLIGENCE (§ 66*)—REPAIR OF BUILDING—LIABILITY OF CONTRACTOR.

Where a subcontractor, in repairing a hallway in an apartment building, necessarily rendered it unsafe for travel by night unless it were lighted, and no trap was left there by him for unwary persons to fall into, he was not liable to a guest of a tenant remaining in the building while the repairs were being made; she assuming the risk of ordinary obstruction to the hallway as far as the contractor was concerned.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 86–89; Dec. Dig. § 66.*]

Kellogg, Howard, and Woodward, JJ., dissenting in part.

Appeal from Trial Term, Saratoga County.

Action by Grace E. Hicks against Roy W. Smith and another. From a judgment of nonsuit, plaintiff appeals. Reversed as to defendant Smith, and affirmed as to defendant Johnson.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Robert H. McCormic, of Albany, for appellant.

William T. Moore, of Mechanicville, for respondent Smith.

Robert Frazier, of Mechanicville, for respondent Johnson.

HOWARD, J. The defendant Smith is the owner of a building in Mechanicville, the second floor of which was arranged for the occupation of tenants; the defendant himself residing at the time of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

accident just across a, driveway from the building. Extensive alterations were being made, and the front stairway leading from the street to the second story had been removed from the center to the southerly side of the building. The defendant Johnson was a subcontractor doing the carpenter work. The principal contractor had agreed to become responsible for all acts and omissions of himself and the subcontractors. There was a common hallway. This was littered with mortar, material, and such other things as are usual at such times. During the alterations some of the tenants moved out. Two tenants remained. There was a back winding stairway, which had not been removed or molested, and which was used by the tenants while the front stairs were being moved. The common hallway was not lighted, although there was an electric light in one private hallway. At the time of the accident the outline of a person's body could be seen in the hallway, but the floor of the landing could not be seen. A loose doorframe had been left at the top of the front stairs leaning against the wall of the building and projecting out over the edge of the top step. The nosing or tread of the top step had not been put on so that the top of the riser was not covered. There were no lights, barricades,. or warnings in the common hallway, and the tenants had never been cautioned not to use the common hallway or the front stairway. Late in the afternoon of October 16th, the day of the accident, the plaintiff entered the apartments of Mrs. Floyd, one of the tenants, going up the front stairway and through the common hallway. Shortly after 7 o'clock she started to leave. Mrs. Floyd, the tenant, and a Mrs. Baxter, another guest, accompanied her. The plaintiff walked slowly and carefully, so she says, and reached the front stairs and descended a few steps. Mrs. Baxter, who was next behind the plaintiff, stepped on something at the head of the stairs, which gave way with her, her left heel caught in something, she stumbled and fell against the plaintiff, and they both fell together to the bottom of the stairs, and were injured.

[1] The plaintiff was nonsuited, and is, accordingly, entitled in this court to the most favorable inferences that can reasonably be drawn from the evidence, including every fair deduction from the undisputed facts. Volosko v. Interurban St. Ry. Co., 190 N. Y. 206, 82 N. E. 1090, 15 L. R. A. (N. S.) 1117; Gordon v. Ashley, 191 N. Y. 186, 83 N. E. 686. Assuming, therefore, all the facts proven and all the most favorable inferences that can reasonably be drawn from the evidence, the question arises: Are the defendants, or either of them, liable?

[2] Under normal conditions, and independent of any covenant binding him to do so, the landlord of an apartment house is bound to keep the common hallways and stairways in good repair. McAdam on Landlord and Tenant, p. 1233; Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238; Sciolaro v. Asch, 198 N. Y. 77, 91 N. E. 263, 32 L. R. A. (N. S.) 945.

[3] When the landlord undertakes to make repairs or alterations in an apartment house, and permits the same to be occupied by his tenants while such repairs are going on, he is not released from responsibility, but is held to a higher degree of care, and is liable for the

negligent way in which such repairs are made. McAdam on Landlord and Tenant, 1254; Sciolaro v. Asch, 129 App. Div. 86, 113 N. Y. Supp. 446.

[4] The law imposes these duties upon the landlord, and he cannot delegate them to others, either under normal conditions or while repairs are being made, so as to relieve himself from responsibility. "One who is personally bound to perform a duty cannot relieve himself from the burden of such obligation by any contract which he may make for its performance by another." Sciolaro v. Asch, 198 N. Y. 77, 91 N. E. 263, 32 L. R. A. (N. S.) 945; Shearman & Redfield on Negligence (5th Ed.) § 14.

[5] And the landlord owes the same duty of care to the guests of tenants as he does to tenants. Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580.

[6] Assuming all the facts, and considering all the inferences arising from the evidence, and applying these well-established rules of law, it seems clear that the landlord, the defendant Smith, was liable. He lived only a few feet away from the building; he permitted his tenants to continue to occupy the building while it was being altered; he had never warned them not to use the common hallway or the front stairway; he received rent; he placed no lights in the common hallway, and made no arrangements with the contractors to place lights there; he erected no barricades; he permitted the hallway to be littered and obstructed; he did nothing personally, in short, to insure the safety of his tenants and their guests. Had the landlord been put to his defense, perhaps he would have been able to prove his freedom from negligence; but, as the case now stands, his negligence is apparent.

The defendant Johnson, the subcontractor, apparently paid no attention to the tenants, or in any manner considered their safety. He had been working in the building two weeks, and in the common hallway, and it must be presumed that he knew the apartments were occupied. Notwithstanding this, he left the hallway littered and obstructed; he erected no barricade; he placed no light or lantern on the obstacles; he posted no warning notices; he failed to observe the most simple and ordinary precautions—in fact, he did nothing whatever to guard against accidents. Under these circumstances there can be no doubt of his negligence. "The law imposes on a person engaged in the prosecution of any work an obligation to perform it in such a manner as not to endanger the lives or persons of others. * * *" 29 Cyc. 425; Wittenberg v. Seitz, 8 App. Div. 439, 40 N. Y. Supp. 899; Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530.

It is the duty of any person making repairs in a common hallway, or passageway, or street, or place where people are lawfully traveling, to take reasonable precautions against accidents.

The defendant Johnson seeks to relieve himself from the consequences of this rule by pointing out that there were no contractual relations between himself and the plaintiff; but this duty to be careful does not grow out of a contractual relation. It arises from that basic and necessary regulation of civilization which forbids any person, because of

his own convenience, to recklessly, heedlessly, or carelessly injure another. Nobody is permitted by the law to create with impunity a stumbling-block, a trap, a snare, or a pitfall for the feet of those rightfully proceeding on their way. Therefore, as the case stood at the time of the nonsuit, Johnson was guilty of negligence.

[7] Concerning the question of the plaintiff's contributory negligence, that was clearly a question for the jury. It is true that the plaintiff knew the situation—the litter, the lumber, the mortar, the tools, the rubbish, the darkness, the unfinished condition; but she was not a trespasser. She had a right to be there. It was her duty, however, to be careful; in fact, it was her duty to exercise much greater care than would be necessary in an ordinary hallway; where no repairs were being made. But whether or not she was careful was a question for the jury.

From the above reasoning it follows that the nonsuit was improper, and that a new trial should be granted, with costs.

WOODWARD, J., concurs.

SMITH, P. J. [8] I dissent from a reversal as to Contractor Johnson. In the making of the repairs he necessarily obstructed the hallway to an extent, and rendered the hallway unsafe for travel at night unless the hall were lighted. But this was not a public hallway. No pit or trap was left there for an unwary person to fall into. He might reasonably assume that, if a tenant chose to remain while such repairs were being made with her full knowledge, she would assume the risk of ordinary obstruction to the hallway as far as he himself was concerned, and would look to her landlord for such protection as she might need. The covenant of the principal contractor to be responsible for all damages arising by reason of his repairs adds nothing to the liability of the defendant Johnson, who in no way made himself a party to such covenant. It simply made the principal contractor either a principal or a surety for the landlord. The duty of Contractor Johnson is the same as though such covenant had not been made. I therefore vote to sustain the nonsuit as to the defendant Johnson.

LYON, J., concurs.

Judgment reversed, and new trial granted, costs to abide event, as to the defendant Smith. All concur, except KELLOGG, J., dissenting. As to the defendant Johnson, judgment affirmed, with costs. All concur, except HOWARD and WOODWARD, JJ., dissenting.

JOHN M. KELLOGG, J. (dissenting). The building had been generally overhauled. The stairway leading to the second floor had been taken out and was located at a different place. The skeleton of the new stairs was up, but the regular treads were not placed upon the risers and stair frame. Evidently rough boards were nailed on to enable the workmen and others to make temporary use of the stairs. The floors were littered with plaster, dirt, shavings, lumber, nails, and other things. No front door had been placed upon the hall, and the hall had not been wired for electricity, although the upper hallway

leading to the Floyds' apartment was lighted by the Floyds. Prior to the repairs, the light upon the stairs had been maintained by the tenants. During the repairs, for two or three months, the plaintiff had been allowed to occupy her rooms rent free, but had begun to pay rent again, and when the hall was wired and the repairs finished the landlord was to light the hall. The rear stairway opened into a lane, and the Floyds, their visitors, and the other tenant who did not move out, used that stairway, at least until the new stairs were up.

The plaintiff and Mrs. Baxter were visiting the Floyd apartment. They entered during the daytime, and were frequent visitors, and knew well the conditions. They left the Floyd apartment after dark, Mrs. Floyd accompanying them. In going down the stairs Mrs. Baxter fell against the plaintiff, causing her to fall, and causing the injury complained of. Mrs. Baxter says:

"Mrs. Hicks went down a few steps ahead of me, down the steps. I was walking on her right along the wall. My feet struck, stepped on something that gave way with me. I felt for the step with my left foot, and my heel caught in something in the stairs, and threw me downstairs."

There was upon the landing a doorframe, but it is evident that it did not cause Mrs. Baxter's fall, as the frame was found in its correct position, and therefore did not give way. Apparently she slipped upon the plaster, or shavings, or some other substance that littered the stairway, and her foot caught the opening between the riser and the temporary tread; the opening being two or three inches. It is therefore evident that the doorframe had nothing to do with the accident, except that it was an additional warning to the parties, as to the general condition of the stairway and the building, that the stairway was not intended for general use, but was in the hands of the carpenters. The plaintiff evidently knew of the back entrance, as the evidence indicates her frequent visits to the apartment, and unless she shut her eyes when she entered the Floyd apartment she must have seen that she was taking chances in using the stairway in that condition. She took the same chances that any person takes in going into a building which is being built or repaired, and in attempting to use the temporary stairs which are intended for the use of the workmen.

I favor an affirmance.