[File No. 7115]

GERHARD HUUS, Respondent v. G. ROY RINGO,
Appellant.

(39 NW2d 505)

Opinion filed October 24, 1949

*George A. McGee, Richard McGee* and *Francis Murphy,* for appellant.

*B. H. Bradford,* for respondent.

MORRIS, J.  The plaintiff received severe personal injuries as the result of a fall down an elevator shaft late in the evening of October 5, 1946, in a building owned by the defendant.  In this action he seeks to recover damages for those injuries upon the ground that they were caused by the negligence of the defendant.  The defendant admits that he was the owner of the building in which the accident occurred but denies that he was in any way negligent, and further alleges that if the plaintiff sustained any injuries they were due solely to the plaintiff's negligence and want of care which contributed proximately thereto.  The jury rendered a verdict in favor of the plaintiff and judgment was entered thereon.  This appeal is taken from that judgment and from an order of the district court denying a motion of the defendant for a judgment notwithstanding the verdict or for a new trial.

We approach our task on this appeal mindful of the firmly established rule that negligence, whether contributory or primary, is a question of fact for the jury unless the evidence is such that reasonable minds can draw but one conclusion therefrom.  Leonard v. North Dakota Co-op Wool Marketing Ass'n, 72 ND 310, 6 NW2d 576; Bagg v. Ottertail Power Co. 70 ND 704, 297 NW 774.  The first question for us to determine is whether the evidence is sufficient to warrant the jury in finding that the defendant was guilty of negligence which was the proximate cause of the plaintiff's injury.  To aid in understanding the facts we reproduce herewith defendant's exhibit B, being a floor plan of the premises.

FLOOR PLAN    DINGO BLOCK

SCALE ½"=1'-0"

The building in which the injury occurred was built by the defendant some thirty years prior to the accident. It is twenty-five feet wide and one hundred forty feet long. The front faces west on South Main Street in the City of Minot. The back or east end abuts on an alley. The building is three stories high with a basement beneath. It is occupied by stores, offices and apartments. One of the offices is occupied by the defendant. The front portion of the main floor is occupied by a hamburger shop known as the Uptown Nook. From the back of this shop a hallway extends some thirty feet to the rear of the building, where a door opens onto the alley. On the south side of the hall is a small two room apartment that was occupied at the time of the accident by Mr. and Mrs. Syverson and their two small children. On the north side of the hall adjacent to the sandwich shop is a storeroom nine feet four inches wide. Next to it is an elevator shaft six feet six inches wide and next to the elevator is a toilet room four feet wide. The remaining space on the north side of the hall is occupied by a stairway leading to the basement. There is also a partition across the hall nine feet four inches from the front end. There is a doorway in this partition three feet by seven, but there is no door. The hall at this point is five feet four inches wide. A door two feet six inches wide opens from the apartment into the hall immediately west of this partition. Less than a foot east of this partition on the north side of the hall is the entrance to the elevator shaft consisting of double doors each two by seven feet. A door two and a half feet wide opens into the toilet immediately east of the elevator shaft.

At about ten thirty on the evening of the accident, the plaintiff and his wife entered the building from the alley, walked through the hallway and entered the apartment of the Syversons. The visit appears to have been a combination of a social call and a business transaction. Syverson was a carpenter and the plaintiff procured his assistance regarding plans for the assembly of some grain bins that the plaintiff had recently purchased. Later that evening the plaintiff and Syverson came out of the apartment into the hall and entered the Uptown Nook through a doorway leading into it from the hall. They returned to the

apartment in a few minutes with coffee and sandwiches which were consumed before midnight. The hallway was then lighted. At about midnight the plaintiff had occasion to go to the toilet which was across the hall and some eight feet to his right as he came out of the apartment door. In doing so he must pass the doors to the elevator shaft. The hallway was then completely dark and the plaintiff without opening any doors fell into the elevator shaft and was injured.

The plaintiff charges the defendant with negligence in so maintaining the elevator shaft, that a door thereof was left open, and in not having the shaft doors constructed in compliance with an ordinance of the City of Minot. This ordinance (Section 155, Revised Ordinances City of Minot 1931) and with reference to elevator shafts provides that "Doors in such shafts shall be of metal or metal covered, having fastenings so placed that they can be opened from the inside of the shaft only and be under perfect control of the elevator operator."

The elevator in question was not used to carry passengers, but was used for freight exclusively. The testimony regarding the construction of the elevator doors is somewhat at variance. That presented in behalf of the plaintiff is to the effect that there was a knob on one of the elevator doors by which it could be opened from the outside. According to the defendant's evidence, some two months before the accident a glass panel in one of the elevator doors had become broken. This broken glass was replaced with a plywood panel. There was a knob on the inside of this elevator door which could be turned and the door opened but no knob on the outside. A hole was cut in the plywood panel large enough for the insertion of a hand. The knob could be reached and turned and the door opened from the outside in that manner. The evidence is clear that this arrangement was made by agents or employees of the defendant and thus maintained for some two months prior to the accident. The defendant asserts that the ordinance was passed after the building was built, is not retroactive and is therefore not applicable to his elevator. We need not concern ourselves with this question other than to state that the testimony of the defendant's witnesses shows that the installation of the plywood and the provi-

sion made for opening the door through a hole from the outside is a violation of the ordinance, which occurred long after its passage, and we need not therefore determine the application of the ordinance to installations made prior to its passage.

The trial court read the ordinance to the jury and followed it by this comment. "The landlord is obliged to keep a hall or hallway, which his tenant is permitted to use, in a reasonably safe condition, and to guard openings in the hallway through which the tenant or the tenant's invitee, may fall and be injured."

The defendant specifies as error both the reading of the ordinance and the comment of the court. In order to get the full meaning of these instructions we quote the remainder thereof pertaining to the ordinance. "Under the provisions of the city ordinance, quoted above, the landlord is obliged to provide a fastening on the door of an elevator shaft and such fastening must be so placed that it can be opened from the inside of the shaft only. If a defect exists in the fastening so as to create an unsafe condition, and if he has knowledge thereof, then such circumstances may be considered by the jury determining whether or not the landlord was negligent."

Thus in effect the court instructed the jury that a violation of the ordinance resulting from a defective fastening of which the plaintiff had knowledge might be considered by it as a circumstance in determining whether the defendant was guilty of negligence. This instruction was not erroneous as to the defendant. See Wilson v. Northern Pacific Railway Co. 30 ND 456, 153 NW 429, LRA1915E 991; Steinke v. Halvorson, 46 ND 10, 178 NW 964.

The question of the defendant's negligence with respect to the plaintiff involves the plaintiff's legal status upon the premises at the time of his injury. If the plaintiff was a mere licensee the defendant owed him no duty other than to refrain from willfully and wantonly inflicting injuries upon him. Costello v. Farmer's Bank, 34 ND 131, 157 NW 982; Colbert v. Ricker, 314 Mass 138, 49 NE2d 459, 147 ALR 647; 38 Am Jur, Negligence, § 104. On the other hand if the plaintiff was an invitee it was the duty of the defendant to use reasonable care to prevent his injury. The trial court apparently took the view that the plain-

tiff was an invitee, for he instructed the jury as follows: "The guest or invitee of a tenant is so identified with the tenant that his right of recovery for injury as against the landlord is the same as that of the tenant, if such invitee suffers injury."

The defendant specifies and argues that the giving of this instruction was error upon the ground that the plaintiff was not an invitee but a mere licensee. In support of his argument that the plaintiff was a licensee the defendant asserts that Syverson was not a tenant but merely an employee of the defendant, and the law as therefore set forth in the trial court's instructions does not apply. The record shows Syverson was a carpenter. He paid no rent in money, but agreed to work two hours each evening for the privilege of living in the apartment. The defendant testified that when Syverson moved in it was agreed that he would work out the rent, and that the defendant wanted to keep out of the office of rent control. It is clearly the rule that where an employee is permitted to occupy premises of the employer in furtherance of and incidental to the service, the relationship of landlord and tenant does not arise though the agreed value of the use of the premises is deducted from the employee's wages or is taken into account as a part of the consideration for the service rendered. Such a case is Davis v. Long, 45 ND 581, 178 NW 936, 14 ALR 796. On the other hand the mere fact that the relationship of master and servant exists does not preclude the servant from being the tenant of the master and paying rent in whole or in part by services. Snedacker v. Powell, 32 Kan 396, 4 P 869; Ofschlager v. Surbeck, 22 Misc 595, 50 NYS 862; Anderson v. Steinreich, 36 Misc 845, 74 NYS 920; 32 Am Jur, Landlord and Tenant, § 9. In this case Syverson was not a full time employee of the defendant. He was a carpenter who agreed to work a specified time each evening in payment of rent. The relationship of landlord and tenant usually arises when one gives to another temporary possession and use of real property for a reward. See Section 47–1601, RCND 1943. That reward may be in the form of labor or services rendered if the parties so agree. That is the situation in this case. The defendant agreed to let Syverson occupy the apartment in return for a specified

amount of labor. Syverson thus became the tenant of the defendant.

The defendant next argues that the plaintiff came upon the premises of his own volition without inducement either by Syverson or by the Defendant Ringo, and thus entering upon the premises to serve his own purposes, the plaintiff was a licensee and not an invitee. The plaintiff had known Syverson for ten years and had visited him before. Syverson was a carpenter and the plaintiff wanted some business with him. He did not communicate with Syverson in advance of the visit. The plaintiff had bought two grain bins. He was having Syverson draw plans for putting them together. The defendant argues that the nature of the relationship is determined primarily by the purpose of the visit and that if one goes upon premises solely in pursuit or furtherance of his own business, pleasure or convenience he is a licensee and not an invitee. This rule has been applied where an invitee goes beyond the limits of his invitation and enters a place not intended for his reception. Wilson v. Goodrich, 218 Iowa 462, 252 NW 142; or where one goes upon the premises for purely social purposes for the enjoyment of unrecompensed hospitality. Page v. Murphy, 194 Minn 607, 261 NW 443. These and other similar cases cited by the defendant involve situations between host and visitor and not situations where the relationship of landlord and tenant exists, and the injured person is traversing a common passageway maintained by the landlord for the use and convenience of his tenants. In this case the building was used by some tenants for maintaining places of business and by others for living quarters. The purpose of the plaintiff's visit is not necessarily controlling in determining whether the plaintiff was a licensee. The conduct of the parties and the nature of the place where the injury occurred have an important bearing on the plaintiff's status.

Davies v. Kelley, 112 Ohio St 122, 146 NE 888, holds that it is the duty of the landlord to use ordinary care to keep in a reasonably safe condition halls, stairways, and other approaches maintained by the landlord for the common use of the tenants and invitees.

In Reardon v. Shimelman, 102 Conn 383, 128 A 705, 39 ALR 287, it is said: "It is the law of this state, as elsewhere, that, speaking generally, the landlord who rents the apartments in his building to various tenants, reserving control of the common approaches, is obligated to use reasonable care to keep those approaches reasonably safe for the use of the tenants; and that it is no defense that someone else is charged by him with, or assumes the performance of, that duty, if it be not performed. Koskoff v. Goldman, 86 Conn 415, 424, 85 A 588; Gaucso v. Levy, 89 Conn 169, 93 A 136; Cook v. Simon, 98 Conn 98, 118 A 634; Pavlovchik v. Lupariello, 101 Conn 567, 127 A 18. This obligation of the landlord extends also to all those who have lawful occasion to visit the tenants for social or business purposes; a right of ingress and egress for all such persons is essential, not merely to the enjoyment of the rented premises by the tenants, but also to the renting of them by the landlord; it is part of that for the use of which he is paid, and it exists for the mutual benefit of landlord and tenants alike."

An invitee need not have a formal invitation to visit the premises. An invitation may be implied from the purposes of a visit and the circumstances surrounding it. Such an invitation would usually be inferred where the visit is of common interest or mutual advantage of the parties, and where one goes upon the premises of another in the common interest or mutual advantage of himself and a tenant, he is there as the implied invitee of the tenant. English v. Thomas, 48 Okla 247, 149 P 906, LRA1916F 1110.

In this case Syverson was a carpenter who was obliged to spend but two hours each evening working for the defendant. Presumably he pursued his trade in the usual manner during the remainder of his working time. The plaintiff entered the building to procure the services of Syverson within the scope of his trade. He remained in the Syverson apartment some two hours during which the men were engaged in working on the plans for grain bins. During that period they went out together to the sandwich shop, purchased a lunch, then returned to the apartment where they ate it. The business of the plans was not completed that evening, but work on them was deferred and the

plaintiff and his wife prepared to depart. It was then that the plaintiff crossed the hall seeking the toilet, and the accident occurred. The rule set forth in Reardon v. Shimelman, supra, that the obligation of the landlord to keep approaches to apartments occupied by his tenants reasonably safe for their use extends to all those who have lawful occasion to visit the tenants for social or business purposes is recognized in these cases. Gibson v. Hoppman, 108 Conn 401, 143 A 635, 75 ALR 148; Gallagher v. Murphy, 221 Mass 363, 108 NE 1081; Ann Cas 1917E, 594; Coupe v. Platt, 172 Mass 458, 52 NE 526, 70 Am St Rep 293; Moohr v. Victoria Invest. Co. 144 Wash 387, 258 P 43; Davies v. Kelley, 112 Ohio St 122, 146 NE 888.

In this case the plaintiff was more than a social guest. He had business with the tenant which was related to the tenant's occupation. He came upon the premises seeking the help of the tenant in preparing grain bin plans. The tenant undertook the work which the plaintiff sought to have performed. The men spent some time working together. Their testimony and conduct establish that at the time of the injury the plaintiff was on the premises as the tenant's invitee.

The defendant challenges rulings of the trial court in admitting certain testimony of the plaintiff and his witnesses regarding the plaintiff's loss of earning power as a result of the injury. As a general rule it may be stated that "A plaintiff who has suffered physical injury through the fault of a defendant is entitled to recover for pain and suffering; for reasonable expenses incurred by him for medical care and nursing in the treatment and cure of his injury; for diminution in his earning power; and for such pain and suffering and such expenses and diminution of earning capacity as are shown to be reasonably probable to continue in the future. The measure of damages is fair compensation for the injury sustained." Rodgers v. Boynton, 315 Mass 279, 52 NE2d 576, 151 ALR 475.

A proper point of inquiry in connection with the diminution of earning power is the comparative capacity of the plaintiff to earn money at the time of and after the injury. Sutherland Damages, 4th ed § 1248; 25 CJS, Damages, § 87; 15 Am Jur, Damages, § 93. The plaintiff was permitted to testify,

over objection, that he worked about the same hours after the injury that he did before, but formerly worked a lot faster and better and earned more money than he did after the accident, and in response to a query as to why he was doing less he answered "Because it is not so easy for me as it used to be."

The plaintiff testified without objection that before the accident he was capable of earning and did earn $60.00 a week, and that at the time of the trial he was averaging $45.00 per week. We find no merit in the defendant's specifications of error regarding the plaintiff's testimony as to a reduction of his earning capacity.

The defendant's next group of specifications deals with the testimony of the witness Bearman, who prior to 1943 worked in the same barber shop as did the plaintiff. Bearman testified that the plaintiff worked for him after his return from the hospital. Over objection he was permitted to state that the plaintiff worked slower than he did before the accident. It was then shown that the witness had been a barber for twenty-two years and was acquainted with the amount of work formerly done by a barber within a certain time. The transcript then shows the following:

Q. "Are you able to form an opinion as to the difference in percentages between the amount of work *Mr. Huus was able to accomplish in a given time before this accident compared with that after the accident?*"
A. "Yes."
Q. "What is that opinion?"

Mr. Murphy: "Objection. That is incompetent, no foundation laid, purely speculative, calling for an opinion without proper foundation and all of the essentials, merely conclusion of the witness and not a statement of fact."
The Court: "Overruled."

Q. "And what percentage is that?"
A. "I would say around 30 percent."
Q. "And he was 30 percent less efficient than before?"
A. "Yes sir."

Mr. Bradford: "I believe that is all."

Mr. Murphy: "I move to strike out all the testimony of this witness with reference to the percentage and efficiency as incompetent and no foundation laid."

The Court: "Motion denied."

By this testimony the witness was permitted to state his opinion with respect to the plaintiff's ability to pursue his calling after the accident. The percentage of efficiency given by the witness is clearly a conclusion. Dunn & Lallande Bros. v. Gunn, 149 Ala 583, 42 So 686. The plaintiff sought to sustain the admissibility of this evidence by attempting to qualify the witness as an expert. Experts may at times state opinions and testify to conclusions with respect to matters falling within their special knowledge, when such opinions do not invade the province of the jury. But the witness here does not qualify as an expert within the framework of the information sought to be elicited. His qualifications are that he is an experienced barber familiar with the amount of work normally done by barbers. He had worked in the same shop with the plaintiff "Prior to 1943". The plaintiff was injured in October 1946 and went to work for the witness on June 18, 1947. On this foundation the witness was asked to give an opinion as to the plaintiff's comparative physical ability in terms of percentage, to perform the work of his trade before and after the accident. The witness is clearly not an expert in the field of physical ability. He makes no attempt to describe the plaintiff's physical condition at any time, or describe the conditions or circumstances under which the plaintiff worked on the two occasions which were remote from each other in point of time. The defendant's objection was well taken, the motion to strike was proper and timely, and the rulings of the court were erroneous.

Another specification of error with regard to evidence requires consideration here. During the testimony of plaintiff's witness, Mrs. Irvin Syverson, she testified that the elevator door could be pulled open by means of a knob on the outside. She also described the accident in considerable detail. Over the defendant's objection this question was asked.

"Now, do you know, if at any time within a few days thereafter, a lock or fastening was placed upon that door so that it could not be so opened?"

To which the witness replied,

"Yes."

The defendant's objection that this testimony was immaterial in that it was something that occurred after the accident was well taken. The court erred in overruling the objection. Kentucky & West Virginia Power Co. v. Stacy, 291 Ky 325, 164 SW 2d 537, 170 ALR 1 and annotation, 15 NCCA NS 127.

The defendant further argues that the verdict is excessive and unreasonable and appears to have been given under the influence of passion and prejudice. The verdict for $17,424.46 is large. On the other hand plaintiff's injuries were severe. He suffered a fracture of the right wrist and a fracture of the right hip. The wrist was stiff and still caused him pain at the time of the trial in December 1947. As a result of the hip fracture the right leg is shortened from one and a half to two inches. When the plaintiff works he wears a built-up shoe to keep his back from hurting. He wears a regular shoe at other times. There is no medical testimony as to the permanency of plaintiff's injury or the probable duration of his disability.

"Expert testimony, while competent, is not essential; the permanence of an injury may be inferred from the time it has continued and its seriousness." Sutherland Damages, 4th ed § 1248.

15 Am Jur, Damages, § 358; Macon R. & L. Co. v. Streyer, 123 Ga 279, 51 SE 342; Missouri, Kansas & Texas Railway Co. v. Fowler, 61 Kan 320, 59 P 648; St. Louis I. M. & S. Railroad Co. v. Cantrell, 63 Okla 187, 164 P 110, LRA1917D 980; Riddel v. Lyon, 124 Wash 146, 213 P. 487, 37 ALR 486; Miller v. Delaware River Transportation Co. 85 NJL 700, 90 A 288, Ann Cas 1916C 165; Hecker v. Union Cab Co. 134 Or 385, 293 P 726. On the other hand the jury may not speculate regarding the extent of the diminution of earning power or the length of time that it may continue. The evidence must afford a reasonable basis for estimating the amount of earnings already lost or

to be lost in the future. McGowan v. Dresher Bros. 106 Neb 374, 183 NW 560.

While the evidence in this case is not entirely satisfactory as to the permanence of plaintiff's injuries, and the extent to which they will disable him in the future, we are not prepared to say that the amount awarded him by the jury is so excessive as to denote passion or prejudice as a matter of law, but the size of the verdict when considered in the light of the competent and relevant evidence lends support to defendant's argument that the erroneous admission of the evidence already alluded to was prejudicial. Upon the basis of the record thus presented and reviewed we hold that the ends of justice can best be served by granting a new trial.

The plaintiff pleaded the affirmative defense of contributory negligence. He asserted in the court below and now asserts that the evidence establishes that the plaintiff was guilty of contributory negligence as a matter of law and that his recovery is therefore barred. In support of his contention he cites Costello v. Farmers Bank, 34 ND 131, 157 NW 982 and Johnson v. Mau, 60 ND 757, 236 NW 472, from this jurisdiction as well as cases from other states. In Johnson v. Mau, supra, this court held that the plaintiff went beyond the scope of his invitation and entered a dark and unfamiliar place and his acts in so doing barred his recovery on the ground of contributory negligence. Many cases to the same effect may be found in an annotation in 163 ALR 587. In fact, the principle that one who proceeds in the dark in a strange place is guilty of contributory negligence as a matter of law has been frequently applied, but in most cases the elements of darkness and unfamiliarity are both present. The same rule does not apply where the person injured was familiar with the premises which were normally safe and was injured through the presence of an unusual, unknown, and unanticipated condition. State for benefit of Workmen's Compensation Fund v. Columbus Hall Asso. 75 ND 275, 27 NW2d 664; Campbell v. Sutliff, 193 Wis 370, 214 NW 374, 53 ALR 771; Edwards v. Alhambra Theatre Co. 198 Wis 228, 224 NW 104.

In the following cases the plaintiff was injured while proceeding into or along a dark hallway, and the question of the plain-

tiff's contributory negligence was held to be a matter for the determination of the trier of facts. Lee v. Ingraham, 106 App Div 167, 94 NYS 284; Hicks v. Smith, 158 App Div 299, 143 NYS 136; Silverman v. Ulrika Realty Corp., 239 App Div 194, 267 NYS 360; Gallagher v. Murphy, 221 Mass 363, 108 NE 1081; Ann Cas 1917E 594.

It would seem that a dark stairway is fraught with danger at least equal to that of a dark hallway. In these cases involving injuries on dark stairways, the question of the plaintiff's contributory negligence was held to be one for the jury. Burk v. Corrado, 116 Conn 511, 165 A 682; Rhodes v. Fuller Land & Improvement Co. 92 NJL 569, 106 A 400.

In Bailey v. Fortugno, 8 NJ Misc 739, 151 A 484, it was held that the fact that the injured person knew of a defective step in a stairway and undertook to use it at an hour in the night so late that it was in a darkened condition does not entitle the landlord to a directed verdict upon the ground of assumption of risk on the part of the plaintiff.

In Burk v. Corrado, supra, it was contended as it is in this case that the plaintiff should have obtained a light before venturing into the dark hallway. In answering that argument the court said, "Granting that the present plaintiff could have protected herself by obtaining a light or other guidance, it does not follow that she was guilty of contributory negligence in failing to do so. One who is put in a perilous position by the negligence of another cannot be regarded as guilty of contributory negligence if he takes such steps to protect himself as a reasonably prudent person would take, even though he might have avoided the injury by the use of better judgment and by taking another course than the one he adopted."

The plaintiff was not a stranger on the premises. He had been there several times before. About four months prior to the accident he had negotiated for the rental of the apartment later occupied by the Syversons. He spent part of two days cleaning up the premises. On the evening of the accident he entered the hallway from the rear and walked forward past the toilet and the elevator shaft to the Syverson apartment. Later that evening he and Syverson went out into the hall and then to the

Uptown Nook for sandwiches and returned to the apartment. The hallway was approximately five feet wide. The distance from the Syverson door to the door of the toilet was about 12 feet. The elevator was used for freight only and not for passengers. When the plaintiff opened the door of the Syverson apartment to go to the toilet the hall was completely dark. Thinking that he knew the location of the toilet he stepped forward and the next thing that he remembers he was seeing the ambulance that took him to the hospital. He opened no door after leaving the apartment.

The question is not whether the plaintiff by pursuing a different course of conduct could have avoided the accident. It is whether an ordinarily prudent person might have reasonably acted as did the plaintiff. The measure of his conduct becomes a question of law only when the facts and circumstances are such that but one inference can fairly and reasonably be drawn from the conduct. If reasonable men might draw different conclusions with respect to the contributory negligence of the plaintiff the determination of the presence or absence of such negligence must be left to the jury. Armstrong v. McDonald, 72 ND 28, 4 NW 2d 191; Leonard v. North Dakota Co-op. Wool Marketing Asso. 72 ND 310, 6 NW2d 576; Wilson v. Oscar H. Kjorlie Co. 73 ND 134, 12 NW2d 526; Fagerlund v. Jensen, 74 ND 766, 24 NW2d 816; State for Benefit of Workmen's Compensation Fund v. Columbus Hall. Asso. 75 ND 275, 27 NW2d 664; Maloney v. City of Grand Forks, 73 ND 445, 15 NW2d 769. Under the facts and circumstances disclosed by this record a difference of reasonable minds might well occur. The court, therefore, properly submitted the question of contributory negligence to the jury.

Because of prejudicial error occurring in the reception of evidence the judgment is reversed and a new trial is ordered.

NUESSLE, Ch. J., and BURKE, J., concur.

MILLER, Dist. J. (dissenting). The plaintiff is guilty of contributory negligence as a matter of law. The evidence touching upon his acts is undisputed. On October 5, 1946, at about 10:30

P.M., plaintiff and his wife went to visit Mr. and Mrs. Syverson who were then living in a rear apartment on the ground floor of the building in which the accident occurred. They entered the rear door and passed through the hall to the apartment, passing an open stairway, toilet room, and elevator shaft to their right on the north side of the building and across the hall from the apartment. The hall was then lighted and was still lighted when the two men later in the evening went to the Nifty Nook at the front of the building for lunch. Plaintiff had previously been in the place a few times and on one occasion had spent parts of two days cleaning the apartment. Shortly before 12 o'clock plaintiff stepped from the apartment into the hall for the purpose of going to the toilet. At the time, they were about to go home and his wife sat and waited for him.

On direct examination he testified:

"Q. What was the condition of the hall relative to any lights at the time you stepped into it?

A. I walked out and right into the hall, it was dark, I figured I knew where it was and I walked in there and I don't remember any more. There was no light at that time, sometimes there are lights they tell me.

Q. Did you open any door?

A. No, I didn't. I opened the door from the Syverson apartment out into the hall and I didn't open any more doors.

Q. What is the next thing that you know?

A. I remember the ambulance, I remember I seen Ted's ambulance because I knew the ambulance driver and I remembered him. That's about the first thing I remember."

On cross examination he testified:

"Yes, I was alone.

Q. And you knew where the toilet was?

A. I knew it was around there.

Q. Was there any light in the toilet?

A. No, I don't think so; I didn't get that far.

Q. Let's see, when you opened the door it was completely and utterly dark in the hallway?

A. That's right.

Q. You could see nothing?

A. No.

Q. And you didn't see anything, nevertheless you walked forward regardless of that?

A. Walked because I figured I knew about where it was but didn't quite know exactly.

After the accident, one Dr. Devine cared for plaintiff at the hospital, and was called by plaintiff as a witness. On cross examination the doctor testified that he asked plaintiff whether he had been drinking that evening and he replied that he had had a few drinks of hard liquor but did not answer his question as to how many; that he made a chart or record of the patient's personal history and therein recorded this information. Such chart was received in evidence. Plaintiff, his wife and the Syversons had testified that there had been no drinking in the apartment that evening but the doctor's statements remain uncontradicted.

It is apparent from the testimony that although the plaintiff had a general familiarity with the premises, he did not have any such entire and close familiarity as a person has with premises that he has occasion to use constantly. It is not shown that he was ever in the hall when there was utter darkness or in the toilet at any time. If he were rational and in possession of his faculties, his actions show more strongly than words that he was not familiar with the premises in the dark and that he had no such familiarity with the location of the toilet as would justify a prudent person in attempting to walk to it in total darkness.

An examination of the floor plan, Exhibit B, discloses that the hall was five-feet four-inches wide and that when the plaintiff stepped into the hall, he was less than a foot from the doorway in the hall partition. When he stepped through such doorway, he was less than a foot west and less than five feet south of the elevator door. The elevator had double doors, each two feet wide. The east elevator door was permanently closed at all times. It was through the west elevator door that plaintiff entered the shaft and if such door were then open, it protruded into the hallway.

According to his testimony, plaintiff stepped directly from the lighted apartment into the hall which was completely dark. He did not wait to have his eyes become accustomed to the darkness nor to take his bearings. Plaintiff knew that when he stepped through the doorway in the partition into the hallway the elevator shaft was less than five feet directly north and that the door to the toilet was some six feet further east. Yet he turned north, walked on without hesitation and without attempting to pick his way or to feel with his hands or feet. If his testimony is true, he walked through the elevator door, only two feet wide, and had no knowledge that he was doing so or sensation of falling and knew nothing about what happened until he found himself in an ambulance.

This is not a case where a person who is familiar with the premises proceeds to go the way he had been accustomed to go to reach his destination and is injured because of unanticipated obstructions placed in his way. If plaintiff had proceeded in the right direction, there was nothing to interfere with his progress and he would not have been injured. He went in the wrong direction.

There was no emergency or stress of circumstances rendering it necessary for plaintiff to proceed in total darkness. He and his wife were about to go home and they lived but two blocks away. After the accident, lights in the hall and toilet were turned on and the Syversons used their flashlight to look down the elevator shaft. It would have been a simple matter for him to have dispelled the darkness in the same manner before the accident. It is apparent that had he left the apartment door open, at least a part of the hall floor would have been illuminated. He did not choose to avail himself of any of these but proceeded in utter darkness, with full knowledge of the presence of an elevator shaft and an open stairway, in a direction he did not intend to go,—a direction which could not bring him to the destination which he sought.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which

defendant is responsible, contributes to the injury complained of as a proximate cause." 45 CJ 942.

"The degree of care required to be used in any given case to avoid the imputation of negligence must be according to the circumstances or in proportion to the danger reasonably to be anticipated—such care as is ordinarily sufficient under similar circumstances to avoid danger and secure safety." 38 Am Jur § 32, pp 678–679.

"It is elementary that every person when in proximity to an elevator shaft the existence of which he knows is bound to use reasonable care for his own safety." 18 Am Jur § 51, p. 549.

"The law requires a person to use his faculties, if he can reasonably do so, and his failure to so do, if it contributes to the injury, will prevent a recovery, and a person will be deemed to have actually seen what could have been seen if he had looked." (209 P 1100), Johnson v. Washington Route Inc., 121 Wash 608, 209 P 1100; DeHoney v. Harding, 300 F 696, 699; Evans v. Orttenberger, 242 Mich 57, 217 NW 753; Central Pub. House v. Flury, 25 Ohio App 214, 157 NE 794; Massey v. Seller, 45 Or 267, 77 P 397; Wilkinson v. Webb-Carter Shoe Co. 57 SD 458, 233 NW 291; Gavin v. O'Connor, 99 NJL 162, 122 A 842, 30 ALR 1383; 38 Am Jur § 191, p 868.

The foregoing cases were cited with approval in Johnson v. Mau, 60 ND 757, 236 NW 472.

"One who voluntarily walks about in total darkness in a strange place must of necessity know that he faces the danger of obstructions, pitfalls, accident, and injury.

"Darkness alone calls upon a person to exercise greater caution for his own safety than is ordinarily required." Wentink v. Traphagen, 138 Neb 41, 291 NW 884; Brusseau v. Selmo, 286 Mich 171, 281 NW 580; Huyink v. Hart Publications, Inc., 212 Minn 87, 2 NW2d 552; Erickson v. McKay, 207 Wis 497, 242 NW 133.

"Contributory negligence will defeat recovery, even though the negligent act of the defendant consisted in the violation of a statute or ordinance." 45 CJ 980; Morrison v. Lee, 22 ND

251, 133 NW 548, 38 LRA NS 412; Sartori v. Capitol City Lodge, 212 Minn 538, 4 NW2d 339.

"The want of ordinary care constituting contributory negligence must be determined from the facts disclosed in each particular case and is generally a question of fact for the jury. When the standard of care is fixed and the measure of duty is defined by the law and is the same under all circumstances, and where plaintiff's compliance or failure to comply with such standard is evidenced by undisputed facts from which only one inference can reasonably be drawn, the question of contributory negligence is one of law for the court." 45 CJ 1299–1301; Johnson v. Mau, 60 ND 757, 236 NW 472, supra; Dahl v. Minneapolis, St. P. & S. S. M. R. Co. 57 ND 538, 223 NW 37; Ferm v. Great Northern R. Co. 53 ND 543, 207 NW 39.

Whether only one inference may be drawn must also rest with the court. 38 Am Jur 1059.

"Numerous cases support the proposition that any person, whether he be on the premises for the purpose of transacting business, or for social or other purposes, who, being unfamiliar with the premises, proceeds through the darkness on such premises, without being able to see what dangers such darkness may conceal, and there being no circumstances to show he was misled through a false sense of safety, is, at least in the absence of evidence indicating any emergency or stress of circumstances rendering it necessary that he should proceed, guilty of contributory negligence as a matter of law." Anno 163 ALR at p. 590.

"A person who comes into an unfamiliar situation, where a condition of darkness renders the use of his eyesight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further, without first finding out where he is going and what may be the obstructions to his safe progress. Violation of that rule is contributory negligence as a matter of law." 1 Shearman & Redfield Negligence, Revised ed, § 131, p 320.

The majority cite certain cases touching upon the plaintiff's contributory negligence being a question for the jury. A reading of those opinions will disclose that in none of them was there

a situation presented similar to the one in this case. In none of them did the plaintiff deliberately and needlessly walk into a place in utter darkness when there were readily available means whereby the place could have been lighted. In such cases, the plaintiff was confronted with some emergency or acted under the stress of special circumstances.

The majority members also find that the relation of landlord and tenant existed between defendant and Syverson and that plaintiff was therefore an invitee. Whether this conclusion is correct is immaterial in view of plaintiff's own negligence. However, there is no evidence sustaining such relationship.

Generally, the relation of landlord and tenant must arise from a contract. 51 CJS 510.

Privity of estate is essential. 51 CJS 511.

The lessee agrees to return possession at a future time. Sec. 47–1601 of 1943 R.C.

When the term of leasing has not been agreed upon, it is presumed to be monthly. Sec. 47–1619 of 1943 R.C.

In this case it was agreed that the relationship of landlord and tenant should not exist so that the transaction would not come under the rent control act. It is also clear that when the employment came to an end Mr. Syverson would not have been entitled to a notice to terminate his right of occupancy. Whether such right is that of a tenant or servant, depends on the language of the agreement and attendant circumstances. 51 CJS 514.

The testimony with reference to this question is undisputed. Whether the relation did exist is therefore one of law for the court. 51 CJS 530.

In any event, "It is well recognized that a person may be an invitee in a portion of a building and not enjoy that status as to other portions thereof." Medcraft v. Merchants' Exchange, 211 Cal 404, 295 P 822 cited in Johnson v. Mau, 60 ND 757, 236 NW 472, supra.

The evidence clearly establishes that Syverson was a servant and not a tenant. 51 CJS 514 (6c).

Plaintiff was an uninvited guest and a mere licensee to whom defendant owed no duty except to refrain from wilfully or wantonly injuring him. He was guilty of contributory negligence

as a matter of law and not entitled to recover whether he was a licensee or invitee and regardless of defendant's negligence.

Defendant's motion for judgment notwithstanding the verdict should have been granted.

I am authorized to say that Judge Christianson concurs in this opinion.

CHRISTIANSON, J., concurs.